# EXHIBIT A

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

In consideration of my present and future consulting relationship with MTI Technology Corporation (together with its subsidiaries, or any companies owned or controlled by MTI Technology Corporation, the "Company"), I agree to the following:

1. PROPRIETARY INFORMATION

    1.1 I understand and acknowledge that my services as a consultant to the Company will involve access to and creation of confidential, proprietary, and trade secret information of the Company and its affiliates, customers, clients, consultants, vendors and business associates (collectively, "Proprietary Information"). I further understand and acknowledge that the Company and its affiliates, customers, clients, consultants, vendors and business associates have developed, compiled, and otherwise obtained this Proprietary Information often at great expense, and that such information has great value to their respective businesses. I agree to hold in strict confidence and in trust for the sole benefit of the Company and its clients all Proprietary Information. I further agree that I shall treat all Proprietary Information as private, privileged, and confidential, and that I shall not use, disclose, or release any Proprietary Information in any way to any person, firm, or institution at any time, even after termination of my consulting relationship, except to the extent necessary to perform my services as a consultant of the Company. I further understand and agree that the publication of Proprietary Information through literature or speeches must be approved in advance in writing by a duly authorized officer of the Company.

    1.2. I understand and acknowledge that, for purposes of this Agreement, "Proprietary Information" means all confidential, proprietary, or trade secret information and ideas in whatever form, tangible or intangible, whether disclosed to or learned or developed by me, pertaining in any manner to the business of the Company or to the Company's affiliates, consultants, clients, or business associates, unless: (i) the information is, or becomes, publicly known through lawful means; (ii) the information was rightfully in my possession or part of my general skill or knowledge prior to my consulting relationship with the Company; or (iii) the information is disclosed to me without confidential or proprietary restriction by a third party who rightfully possesses the information (without confidential or proprietary restriction) and did not learn of it, directly or indirectly, from the Company.

    1.3. Without limiting the generality of the foregoing, I understand and acknowledge that "Proprietary Information" includes all: (i) inventions, computer codes, computer programs, formulas, schematics, techniques, algorithms, employee suggestions, development tools and processes, computer printouts, design drawings and manuals, and improvements or modifications to the foregoing; (ii) information about costs, profits, markets, and sales; (iii) plans for future development and new product concepts; (iv) all documents, books, papers, drawings, models, sketches, and other data of any kind and description, including electronic data recorded or retrieved by any means, that have been or will be given to me by the Company (or any present or future affiliates, customers, clients, consultants, vendors and business associates of the Company), as well as written or verbal instructions or comments; and (v) information regarding the compensation and skills of employees of the Company.

    1.4 I agree that I will maintain under my control only such Proprietary Information that I have a current "need to know," and that I will return to the appropriate person or location, or otherwise dispose of, Proprietary Information once my need to know no longer exists. I agree that I will not make copies of information unless I have a legitimate need for such copies in connection with my work.

oc-227298

MTI Proprietary
Info. Agreement

2. **THIRD-PARTY INFORMATION**

I recognize that the Company has received and in the future will receive from third parties their confidential and/or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for limited purposes. I agree that I owe the Company and such third parties, during the term of my consulting relationship and thereafter, a duty to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm, or corporation (except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party) or to use it for the benefit of anyone other than for the Company or such third party (consistent with the Company's agreement with such third party) without the express written authorization of a duly authorized officer of the Company.

3. **ASSIGNMENT OF INVENTIONS**

3.1 I hereby assign to the Company, without additional consideration, all right, title and interest (throughout the United States and in all foreign countries) in all ideas, processes, inventions, technology, writings, computer programs, designs, formulas, discoveries, patents, copyrights, trademarks, service marks, works of authorship, any claims or rights, and any improvements or modifications to the foregoing (collectively, "Inventions"), whether or not subject to patent or copyright protection, that have been or will be conceived, developed, or reduced to practice by me alone or with others (i) during the term of my consulting relationship, whether or not conceived or developed during regular business hours, and whether or not conceived before, on, or after the date hereof; or (ii) if based on Proprietary Information, after termination of my consulting relationship. Such Inventions shall be the sole property of the Company and, to the maximum extent permitted by applicable law, shall be deemed works made for hire.

3.2 I understand that the assignment by me to the Company does not apply to Inventions that qualify fully under Section 2870(a) of the California Labor Code, which is set forth on Schedule "A." I further understand that nothing in this Agreement is intended to expand the scope of protection provided by Sections 2870 through 2872 of the California Labor Code. To avoid future confusion, I have listed on Schedule "A" a description of all Inventions, if any, developed or conceived by me in which I claim any ownership or other right. It is understood and agreed that the attached list is a complete listing of all Inventions that are to be excluded from this Agreement as having been made prior to the commencement of my consulting relationship with the Company. I understand that, by not listing an Invention, I am acknowledging that the Invention was not developed or conceived before my consulting relationship with the Company commenced.

4. **WORKS FOR HIRE**

I acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of my consulting relationship and that are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C. Section 101 *et seq.*)

5. **DISCLOSURES**

I agree to maintain adequate and current written records on the development of all Inventions and to disclose promptly to the Company all Inventions and relevant records, which will remain the sole property of the Company. I further agree to promptly disclose to the Company all information and records relating to any Inventions developed, conceived, reduced to practice, or authored by me (alone or with others) during the term of my consulting relationship and during the one-year period after my consulting relationship with the Company terminates. Any disclosures made by me after my consulting relationship terminates will be received by the Company in confidence for the purpose of determining if the Inventions have

been based on Proprietary Information, and are subject to the terms of this Agreement.

6. INFORMATION ON COMPANY PREMISES

I understand and agree that all information generated, received, or maintained by or for me on the premises or equipment of the Company (including, without limitation, computer systems and electronic-mail or voicemail systems) is the property of the Company, and I hereby waive any property or privacy rights that I may have with respect to such information.

7. INTERFERENCE WITH COMPANY BUSINESS

7.1 I agree that, during my consulting relationship with the Company, I will not engage in any business activity that is or may be competitive with, or that would otherwise conflict with, my consulting relationship with the Company.

7.2 I understand that the Company's business relationships with its affiliates, clients, customers, employees, consultants, business associates, and other persons are valuable business assets, and that I would not have access to these contacts but for my consulting relationship with the Company. To avoid interfering with these business relationships, and to forestall any use or disclosure of Proprietary Information in breach of this Agreement, I agree that I will not during or after my consulting relationship with the Company, for myself or for any third party, directly or indirectly: (i) engage in any business activity that would require the actual or inevitable use or disclosure of Proprietary Information; (ii) employ, solicit for employment, or recommend for employment any person employed by the Company; or (iii) divert or attempt to divert from the Company any business of any kind in which it is engaged including, but not limited to, the solicitation or interference with any of its suppliers or customers.

8. RETURN OF COMPANY PROPERTY

On termination of my consulting relationships with the Company, or at any time the Company requests, I shall deliver immediately to the Company all property belonging to it and all material containing Proprietary Information, including copies, in my possession or control, whether prepared by me or others.

9. REMEDIES

I recognize that nothing in this Agreement is intended to limit any remedy the Company may have under the California Uniform Trade Secrets Act or any other law, and that I could face possible criminal and civil actions, including imprisonment and monetary liability, if I misappropriate the Company's or its clients' trade secrets. In addition, I recognize that my violation of this Agreement could cause the Company irreparable harm and significant injury, the amount of which may be extremely difficult to estimate, thus, making any remedy at law or in damages inadequate. Therefore, I agree that, in the event of a breach or threatened breach that involves Proprietary Information of the Company or its clients, the Company shall have the right to enforce the provisions of this Agreement by injunction, specific performance, or other legal or equitable relief. This right shall be in addition to, and without prejudice to, any other remedies available to the Company in law or equity.

10. NOTIFICATION TO SUBSEQUENT EMPLOYER

I agree that, after the termination of my consulting relationship with the Company, I will not enter into any agreement that conflicts with my obligations under this Proprietary Information Agreement and will inform any subsequent employers of my obligations under this Proprietary Information Agreement. I further agree that, after the termination of my consulting relationship with the Company, I will, if requested by the Company, sign and deliver to any necessary proof that I am in compliance with my obligations under this Proprietary Information Agreement. Moreover, I hereby consent to the notification of any subsequent employer or

entity to which I provide consulting services of my obligations under this Agreement.

11. SUCCESSORS AND ASSIGNS

I understand and agree that the Company may assign to another person or entity any of its rights under this Agreement. I further understand and agree that this Agreement shall be binding upon me and my heirs, executors, administrators, and successors, and shall inure to the benefit of the Company's successors and assigns.

12. SURVIVAL

I understand that my obligations contained in this Agreement will survive the termination of my employment with the Company.

13. SEVERABILITY

If any provision of this Agreement is determined to be invalid, unenforceable or illegal, the validity or enforceability of the other provisions shall not be affected. In addition, if any one or more provisions contained in this Agreement shall be held to be excessively broad as to duration, geographical scope, activity, or subject, it shall be construed by limiting or reducing it, so as to be enforceable with applicable law.

14. CHOICE OF LAW

I understand that the interpretation, validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to or application of any of California's conflict of law rules.

15. WAIVER

No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

16. ENTIRE AGREEMENT

The terms of this Agreement are the final expression of my agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous agreement. This Agreement shall constitute the complete and exclusive statement of its terms and no extrinsic evidence whatsoever may be introduced in any judicial, administrative, or other legal proceeding involving this Agreement. No modification or amendment of this Agreement shall be binding unless executed in writing by me and a duly authorized officer of the Company.

\* \* \* \*

I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ITS TERMS. I HAVE COMPLETED SCHEDULE "A" BEFORE SIGNING THIS AGREEMENT, LISTING ALL INVENTIONS AND RIGHTS THAT I WISH TO EXCLUDE FROM OPERATION OF THIS AGREEMENT.

Signature: _____

Name: 7/2/04 Richard Bocchieri

Date: 7/2/04

## Schedule "A"

I understand that the assignment by me to the Company does not apply to Inventions that qualify fully under Section 2870(a) of the California Labor Code, which is set forth below. I further understand that nothing in this Agreement is intended to expand the scope of protection provided by Sections 2870 through 2872 of the California Labor Code. To avoid future confusion, I have listed below a description of all Inventions (as defined in the Proprietary Information Agreement) and other intellectual property, if any, developed or conceived by me in which I claim any ownership or other right. It is understood and agreed that the list is a complete listing of Inventions and other intellectual property that are to be excluded from assignment to the Company under the Proprietary Information Agreement as having been made prior to my employment with the company.

---

CALIFORNIA LABOR CODE SECTION 2870(a)

Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information, except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

---

1. Except as set forth below, there are no Inventions that I wish to exclude from the operation of this Agreement (attach additional sheets if necessary):

_____
_____
_____

2. Due to prior confidentiality agreement(s), I cannot complete the above disclosure with respect to Inventions generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe the following parties (attach additional sheets if necessary):

| Inventions or Improvements | Parties | Relationship |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

oc-65345

MTI Proprietary
Info. Agreement

# EXHIBIT B

## EMPLOYEE/CONSULTANT PROPRIETARY INFORMATION AGREEMENT

In consideration of my present and future employment by MTI Technology Corporation, a Delaware Corporation (together with its subsidiaries, or any companies owned or controlled by MTI Technology Corporation, the "Company"), I agree to the following:

1.         Proprietary Information.

    (a) I understand and acknowledge that my work as an employee of the Company will involve access to and creation of confidential, proprietary, and trade secret information of the Company and its affiliates, consultants, customers, clients, and business associates (collectively, as defined more extensively below, "Proprietary Information"). I further understand and acknowledge that the Company and its clients have developed, compiled, and otherwise obtained this Proprietary Information often at great expense, and that such information has great value to their respective businesses. I agree to hold in strict confidence and in trust for the sole benefit of the Company and its clients all Proprietary Information. I further agree that I shall treat all Proprietary Information as private, privileged, and confidential, and that I shall not use, disclose, or release any Proprietary Information in any way to any person, firm, or institution at any time, even after termination of my employment, except to the extent necessary to carry out my responsibilities as an employee of the Company. I further understand and agree that the publication of Proprietary Information through literature or speeches must be approved in advance in writing by a duly authorized officer of the Company.

    (b) I understand and acknowledge that, for purposes of this Agreement, "Proprietary Information" means all confidential, proprietary, or trade secret information and ideas in whatever form, tangible or intangible, whether disclosed to or learned or developed by me, pertaining in any manner to the business of the Company or to the Company's affiliates, consultants, clients, or business associates, unless: (i) the information is or becomes publicly known through lawful means; (ii) the information was rightfully in my possession or part of my general knowledge prior to my employment by the Company; or (iii) the information is disclosed to me without confidential or proprietary restriction by a third party who rightfully possesses the information (without confidential or proprietary restriction) and did not learn of it, directly or indirectly, from the Company.

    (c) Without limiting the generality of the foregoing, I understand and acknowledge that "Proprietary Information" includes all: (i) inventions, computer codes, computer programs, formulas, schematics, techniques, algorithms, employee suggestions, development tools and processes, computer printouts, design drawings and manuals, and improvements or modification to any of the foregoing; (ii) information about costs, profits, markets, and sales; (iii) plans for future development and new product concepts; and (iv) all documents, books, papers, drawings, models, sketches, and other data of any kind and description, including electronic data recorded or retrieved by any means, that have been or will be given to me by the Company (or any present or future affiliates, consultants, customers, clients, and business associates of the Company), as well as written or verbal instructions or comments.

oc-65345

MTI Proprietary
Info. Agreement

2.  **Third-Party Information.** I recognize that the Company has received and in the future will receive from third parties their confidential and/or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree that I owe the Company and such third parties, during the term of my employment and thereafter, a duty to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm, or corporation (except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party) or to use it for the benefit of anyone other than for the Company or such third party (consistent with the Company's agreement with such third party) without the express written authorization of a duly authorized officer of the Company.

3.  **Inventions.**

    (a)  I hereby assign to the Company, without additional consideration, all right, title and interest (throughout the United States and in all foreign countries) in all ideas, processes, inventions, technology, writings, computer programs, designs, formulas, discoveries, patents, copyrights, trademarks, service marks, original works of authorship, any claims or rights, and any improvements or modifications to the foregoing (collectively, "Inventions"), whether or not subject to patent or copyright protection, that have been or will be conceived, developed, or reduced to practice by me alone or with others (i) during the term of my employment, whether or not conceived or developed during regular business hours, and whether or not conceived before, on, or after the date hereof; or (ii) if based on Proprietary Information, after termination of my employment. Such Inventions shall be the sole property of the Company and, to the maximum extent permitted by applicable law, shall be deemed works made for hire.

    (b)  I understand that the assignment by me to the Company does not apply to Inventions that qualify fully under Section 2870(a) of the California Labor Code, which is set forth on Schedule "A." I further understand that nothing in this Agreement is intended to expand the scope of protection provided by Sections 2870 through 2872 of the California Labor Code. To avoid future confusion, I have listed on Schedule "B" a description of all Inventions, if any, developed or conceived by me in which I claim any ownership or other right. It is understood and agreed that the attached list is a complete listing of all Inventions that are to be excluded from this Agreement as having been made prior to employmnet. I understand that, by not listing an Invention, I am acknowledging that the Invention was not developed or conceived before commencement of my employment.

4,  **Disclosure.** I agree to maintain adequate and current written records on the development of all Inventions and to disclose promptly to the Company all Inventions and relevant records, which records will remain the sole property of the Company. I further agree that all information and records pertaining to any Inventions conceived, developed, or reduced to practice by me (alone or with others) during my period of employment or during the one-year period following termination of my employment, shall be promptly disclosed to the Company (any such disclosures made after the termination of my employment shall be received by the Company in confidence for the purpose of determining if they have been based on any Proprietary Information). The Company shall examine such information to determine if in fact such information are Inventions subject to this Agreement.

oc-65345                                2                              MTI Proprietary
                                                                       Info. Agreement

5. <u>Former or Conflicting Agreements</u>. During my employment with the Company, I will not disclose to the Company, or use, or induce the Company to use, any confidential, proprietary, or trade secret information of others. I represent and warrant that I have returned all property and confidential, proprietary, and trade secret information belonging to all prior employers, if any. I further represent and warrant that my performance of the terms of this Agreement will not breach any agreement to keep in confidence confidential, proprietary, and trade secret information acquired by me in confidence or in trust prior to my employment by the Company. I have listed in Schedule "A" all other agreements concerning proprietary information or inventions to which I am a party and attached copies of any agreements in my possession. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

6. <u>Information on Company Premises</u>. I acknowledge that all information generated, received, or maintained by or for me on the premises or equipment of the Company (including, without limitation, computer systems and electronic-mail or voicemail systems) is the property of the Company, and I hereby waive any property or privacy rights that I may have with respect to such information.

7. <u>Termination of Employment</u>.

(a) I acknowledge and agree that nothing in this Agreement shall be construed to imply that the term of my employment is of any definite duration. I further acknowledge and agree that I am employed on an "at-will" basis, which means that I may quit at any time with or without cause, and the Company may terminate my employment at any time with or without cause. On termination of my employment with the Company, I understand that my obligations contained in this Agreement will survive the termination of my employment with the Company.

(b) I acknowledge that the Company's relationships with its employees, affiliates, consultants, customers, clients, business associates, and other persons are valuable business assets. To forestall any use or disclosure of Proprietary Information in breach of this Agreement, I agree that for the term of this Agreement and for a period of one year after termination of my employment with the Company, I shall not, for myself or any third party, directly or indirectly: (i) divert or attempt to divert from the Company any business of any kind in which it is engaged, including, without limitation, the solicitation or interference with any of its suppliers or customers; (ii) employ, solicit for employment, or recommend for employment any person employed by the Company; or (iii) engage in any business activity that is or may be competitive with Company in any state in which the Company conducts its business, unless I can prove that the action was taken without the use of Proprietary Information. Furthermore, I agree that during the period of my employment with the Company, I shall not engage in any business activity that is or may be competitive with the Company.

8. <u>Return of Company Property</u>. On termination of my employment with the Company, or at any time the Company requests, I shall deliver immediately to the Company all property belonging to the Company and all material containing Proprietary Information, including copies, in my possession or control, whether prepared by me or others.

oc-65345                                        3                                   MTI Proprietary
                                                                                    Info. Agreement

9. <u>Remedies.</u> I recognize that nothing in this Agreement is intended to limit any remedy of the Company under the California Uniform Trade Secrets Act and that I could face possible criminal and civil actions, resulting in imprisonment and substantial monetary liability, if I misappropriate the Company's or its clients' trade secrets. In addition, I recognize that my violation of this Agreement could cause the Company irreparable harm and significant injury, the amount of which may be extremely difficult to estimate, thus, making any remedy at law or in damages inadequate. Therefore, I agree that, in the event of a breach or threatened breach that involves Proprietary Information of the Company or its clients, the Company shall have the right to apply to any court of competent jurisdiction for an order restraining any breach or threatened breach of this Agreement and for any other relief the Company deems appropriate. This right shall be in addition to any other remedy available to the Company in law or equity.

10. <u>Successors and Assigns.</u> I understand and agree that the Company may assign to another person or entity any of its rights under this Agreement. I further understand and agree that this Agreement shall be binding upon me and my heirs, executors, administrators, and successors, and shall inure to the benefit of the Company's successors and assigns.

11. <u>Severability.</u> If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the validity or enforceability of the other provisions shall not be affected.

12. <u>Choice of Law.</u> The validity, interpretation, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California without giving effect to its conflict of law rules. Any dispute, action, litigation, or other proceeding concerning this Agreement shall be instituted, maintained, heard, and decided in Orange County, California.

13. <u>Entire Agreement.</u> The terms of this Agreement are the final expression of my agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous agreement. This Agreement shall constitute the complete and exclusive statement of its terms and no extrinsic evidence whatsoever may be introduced in any judicial, administrative, or other legal proceeding involving this Agreement. No modification or amendment of this Agreement shall be binding unless executed in writing by me and a duly authorized officer of the Company.

This Agreement is made and entered into as of ___June 12___, 200_0_.

MTI TECHNOLOGY CORPORATION

By: _____

Title: __VP Treas___

Employee: _Chris Bates_

Signature: _____

oc-65345      4      MTI Proprietary Info. Agreement

## Schedule A

### California Labor Code Section 2870(a)

Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information, except for those inventions that either:

    (1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    (2)    Result from any work performed by the employee for the employer.

## Schedule B

1.　　**Proprietary Information.** Except as set forth below, I acknowledge that at this time I know nothing about the business or Proprietary Information of the Company, other than information I have learned from the Company in the course of being hired:

_____
_____
_____
_____

2.　　**Reserved Inventions.** Except as set forth below, there are no ideas, processes, inventions, technology, writings, programs, designs, formulas, discoveries, patents, copyrights, or trademarks, or any claims, rights, or improvements to the foregoing, that I wish to exclude from the operation of this Agreement:

_____
_____
_____
_____

3.　　**Prior Agreements.** Except as set forth below, I am aware of no prior agreements between me and any other person or entity concerning proprietary information or inventions (attach copies of all agreements in your possession):

_____
_____
_____
_____
_____

Name: _Chris Butts_
Signature: _[signature]_
Date: _6/12/00_

# EXHIBIT C



# Use & Compliance

### Use & Compliance Agreement Form

Date: 10/15/2004

For: Matthew Dwyer

This computer has been configured with standard software applications approved for use at MTI Technology including software that has been factory installed. In addition, this computer has been configured and tested with the associated hardware devices and software applications to guarantee a high degree of plug-and-play by the end user and has been thoroughly scanned for viruses.

Please DO NOT load applications without written approval of MIS. It is the user's responsibility to manage and back-up software applications and files to avoid the mishandling of the computer which may cause major hardware problems. If you require a specific software application, a specific version of software, or experience any hardware or software problems, please contact us at Corporate MIS in Tustin, CA (extension 5545) or call (714) 481-5545.

Upon your termination of employment from MTI, this laptop is to be returned to MTI in fully operational condition. DO NOT format or FDISK the hard drive or delete any data. You will be held responsible for all damage to the hardware and software.

Username: mdwyer
Password: mdwyer72
Domain: AMERICA
Description:
Serial No.: CN-0G5152-48643-49E-3589
Asset Tag: 102586
Laptop - Dell Latitude D600
Part No.: G4911

Please sign and date the following indicating the receipt of your laptop. Please make a copy of this form and forward it to Human Resources within 3 days.

Employee Signature
Date Laptop Received: 10/18/2004

---

**For Future Use by Human Resources:**

Employee's Signature verifying
Laptop was returned

MIS Acknowledgement of receipt
of Laptop

Date Returned

Date Received by MIS

It is the employee's responsibility to return this form to the Human Resources Department upon his/her termination of employment.

*Laptop Routing Forms*     *Form Number MIS-1011 Rev. A*     *Company Confidential*