EXHIBIT Q

 # Use & Compliance

### Use & Compliance Agreement Form

Date: *12/29/2004*

For: *Tar, Thomas*

This computer has been configured with standard software applications approved for use at MTI Technology including software that has been factory installed. In addition, this computer has been configured and tested with the associated hardware devices and software applications to guarantee a high degree of plug-and-play by the end user and has been thoroughly scanned for viruses.

**Please DO NOT load applications without written approval of MIS. It is the user's responsibility to manage and back-up software applications and files to avoid the mishandling of the computer which may cause major hardware problems. If you require a specific software application, a specific version of software, or experience any hardware or software problems, please contact us at Corporate MIS in Tustin, CA (extension 5545) or call (714) 481-5545.**

Upon your termination of employment from MTI, this laptop is to be returned to MTI in fully operational condition. **DO NOT format or FDISK the hard drive or delete any data. You will be held responsible for all damage to the hardware and software.**

| Username: | *ttar* | Description: | *Laptop - Dell Latitude D600* | | |
|---|---|---|---|---|---|
| Password: | *ttar72* | Serial No.: | *B82FC61* | | |
| Domain: | *AMERICA* | Asset Tag: | *105079* | Part No.: | *G4911* |

Please sign and date the following indicating the receipt of your laptop. Please make a copy of this form and forward it to Human Resources within 3 days.

_____          _____
Employee Signature                                      Date Laptop Received

---

**For Future Use by Human Resources:**

_____          _____
Employee's Signature verifying                  MIS Acknowledgement of receipt
Laptop was returned                                   of Laptop


_____          _____
Date Returned                                            Date Received by MIS

**It is the employee's responsibility to return this form to the Human Resources Department upon his/her termination of employment.**

---

EXHIBIT R





## MTI TECHNOLOGY CORPORATION

## MUTUAL CONFIDENTIALITY AGREEMENT
### Control Number: 10-014

This Agreement ("Agreement") is entered into as of June 19, 2007 ("Effective Date") by and between MTI Technology Corporation, a corporation having its principal address at 17595 Cartwright Road, Irvine, California 92614 ("MTI"), and FusionStorm, a corporation having its principal address at 2 Bryant Street, Suite 150, San Francisco, CA 94105 ("Company"). The parties wish to protect and preserve the confidential and/or proprietary nature of information and materials that may be disclosed or made available to each other in connection with certain discussions, negotiations or dealings between the parties relating to a potential strategic transaction (the "Purpose"). In consideration of the foregoing and the rights and obligations set forth herein, both parties hereby agree as follows:

1.  PROPRIETARY INFORMATION.

"Proprietary Information" means any and all confidential or proprietary information and material ("Proprietary Information") disclosed by the disclosing party ("Discloser") to the receiving party ("Recipient") or obtained by Recipient through inspection or observation of Discloser's property or facilities (whether in writing, or in oral, graphic, electronic or any other form). Proprietary Information, includes, without limitation, any (a) trade secret, know-how, idea, invention, process, technique, algorithm, program (whether in source code or object code form), hardware, device, design, schematic, drawing, formula, data, plan, strategy and forecast of, and (b) technical, engineering, manufacturing, product, marketing, servicing, financial, personnel and other information and materials of, Discloser and its employees, consultants, investors, affiliates, licensors, suppliers, vendors, customers, clients and other persons and entities.

2.  NON-DISCLOSURE AND LIMITED USE.

Recipient shall hold all Proprietary Information in strict confidence and shall not disclose any Proprietary Information to any third party, other than to its employees and agents, consultants, subsidiaries and other affiliates who need to know such information and who are bound in writing by restrictions regarding disclosure and use of such information comparable to and no less restrictive than those set forth herein. Recipient shall not use any Proprietary Information for the benefit of itself or any third party or for any purpose other than the Purpose. Recipient shall take the same degree of care that it uses to protect its own confidential and proprietary information and materials of similar nature and importance (but in no event less than reasonable care) to protect the confidentiality and avoid the unauthorized use, disclosure, publication or dissemination of the Proprietary Information. Recipient shall not make any copies of the Proprietary Information except to the extent reasonably necessary to carry out the Purpose, or unless otherwise approved in writing in advance by Discloser. Any such copies made shall be identified as the property of Discloser and marked "confidential," "proprietary" or with a similar legend. Recipient shall not decompile, disassemble or otherwise reverse engineer (except to the extent expressly permitted by applicable law, notwithstanding a contractual obligation to the contrary) any Proprietary Information or any portion thereof, or determine or attempt to determine any source code, algorithms, methods or techniques embodied in any Proprietary Information or any portion thereof. If the parties mutually agree to enter into or continue a business relationship or other arrangement relating to the Purpose and do not enter into a new confidentiality agreement, the terms and conditions set forth herein shall also apply to

any information and/or materials related to, or activities undertaken in connection with, carrying out such business relationship or other arrangement, unless otherwise agreed to by the parties in writing. Except as required by law or as reasonably required to assert its rights hereunder, neither party shall disclose the existence or substance of the discussions between the parties or any terms of this Agreement or any related agreement between the parties (or any matters relating thereto), without the prior written consent of the other party. The obligations of this Section 2 with respect to any item of Proprietary Information, or with respect to any discussions or agreements between the parties, shall survive any termination or expiration of this Agreement and continue for five (5) years from the date of Recipient's receipt of such Proprietary Information.

> **Deleted:** 2

**3. SECURITIES ISSUES.**

Company expressly confirms and agrees that no public disclosure with respect to the Transaction (or the terms or conditions or any other facts relating thereto), any item of Proprietary Information (or the fact that Proprietary Information has been made available to Company or its Representatives) or any discussions or negotiations taking place as referred to herein is now required by Company as a result of the United States securities laws, including, but not limited to the Securities Exchange Act of 1934 as amended (the "Exchange Act"), or the rules and regulations promulgated thereunder, or similar requirements related to general disclosure. In the event Company determines in the future that such disclosure by Company is required, no such disclosure shall be made unless and until Company consults with MTI regarding the necessity and form of any such disclosure, and provides MTI a reasonable opportunity to review the proposed disclosure and comment thereon. This Section 3 shall not prevent disclosure by either party to the extent required by applicable law or the requirements of the National Association of Securities Dealers. The obligations of this Section 3 with respect to any item of Proprietary Information or with respect to any discussions or agreements between the parties shall survive any termination or expiration of this Agreement.

Company hereby acknowledges that it is aware (and, if applicable, that its Representatives who are apprised of this matter have been advised) that the United States securities laws prohibit any person from purchasing or selling any securities of a company if that person has obtained from that company material non-public information about that company.

In consideration of being furnished the Proprietary Information which consists of confidential and non-public information, Company agrees that, without the prior written consent of MTI, for a period of two (2) years from the date of this Agreement, neither Company nor any Representative will, directly or indirectly (including, but not limited to, through one or more affiliates), (i) acquire or agree, offer, seek or propose to acquire, ownership (including, but not limited to, beneficial ownership as defined in Rule 13d-3 under the Exchange Act) of all or substantially all of MTI's business or any of its subsidiaries or any securities issued by MTI or any of its subsidiaries, or any rights or options to acquire such ownership (including from a third party); (ii) make, or in any way participate in, any "solicitations" of "proxies" (as such terms are defined under Regulation 14A of the Exchange Act) to vote or seek to advise or influence in any matter whatsoever any person or entity with respect to the voting of any securities of MTI or any of its subsidiaries; (iii) form, join or in any way participate in a "group" (within the meaning of Section 13(d)(3) of the Exchange Act) with respect to any voting securities of MTI or any of its subsidiaries; (iv) arrange any financing for the purchase of any voting securities or securities convertible or exchangeable into or exercisable for any voting securities or assets of MTI or any of its subsidiaries; or (v) otherwise act, whether alone or in concert with others, to seek to propose to MTI or any of its stockholders any merger, business combination, restructuring, recapitalization or similar transaction to or with MTI or any of its subsidiaries or otherwise seek or propose to influence or control MTI's management or policies, in each case unless and until specifically invited by MTI or a designated representative of MTI.

**4. SCOPE.**

| MTI | Page 2 of 5 | Mutual Confidentiality Agreement #10-014 rev 11-1-05 |
| --- | --- | --- |
| oc-325578 v2 | | |

The obligations of this Agreement, including the restrictions on disclosure and use, shall not apply with respect to any Proprietary Information to the extent such Proprietary Information: (a) is or becomes publicly known through no act or omission of Recipient; (b) was lawfully known by Recipient without confidential or proprietary restriction before receipt from Discloser, as evidenced by Recipient's contemporaneous written records; (c) becomes rightfully known to Recipient without confidential or proprietary restriction from a source other than Discloser that does not owe a duty of confidentiality to Discloser with respect to such Proprietary Information; or (d) is independently developed by Recipient without the use of or reference to the Proprietary Information of Discloser, as evidenced by Recipient's contemporaneous written records. In addition, Recipient may use or disclose Proprietary Information to the extent (i) Discloser preapproved such use in writing or (ii) Recipient is legally compelled to disclose such Proprietary Information, provided, however, that prior to any such compelled disclosure, Recipient shall give Discloser reasonable advance written notice of any such disclosure and give Discloser reasonable opportunity to secure a protective order. Further, each party may disclose the terms and conditions of this Agreement: (A) as required by the applicable securities laws, including, without limitation, requirements to file a copy of this Agreement (redacted to the extent reasonably permitted by applicable law) or to disclose information regarding the provisions hereof or performance hereunder to applicable regulatory authorities; (B) in confidence, to legal counsel; (C) in confidence, to accountants, banks, and financing sources and their advisors; and (D) in connection with the enforcement of this Agreement or any rights hereunder.

5. OWNERSHIP.

All Proprietary Information of Discloser (including, without limitation, all copies, extracts and portions thereof) is and shall remain the sole property of Discloser. Recipient does not acquire (by license or otherwise, whether express or implied) any intellectual property rights or other rights under this Agreement or any disclosure hereunder, except the limited right to use such Proprietary Information in accordance with the express provisions of this Agreement. All rights relating to the Proprietary Information that are not expressly granted hereunder to Recipient are reserved and retained by Discloser.

6. NO WARRANTY.

Except as may be otherwise agreed to in writing, no warranties of any kind, whether express or implied, are given by Discloser with respect to any Proprietary Information or any use thereof, and the Proprietary Information is provided on an "AS IS" basis. Discloser hereby expressly disclaims all such warranties, including any implied warranties of merchantability and fitness for a particular purpose and any warranties arising out of course of performance, course of dealing or usage of trade.

7. TERMINATION.

Either party may terminate this Agreement at any time upon written notice to the other party, and neither party shall have any obligation to disclose any Proprietary Information or to continue discussions relating to, or to enter into or continue any arrangement or agreement relating to, the Purpose or any other matter, except as agreed in writing by the parties. Sections 3, 5, 6, 7, 8, 9, and 11 and, to the extent expressly provided therein, Sections 2 and Section 10, shall survive the expiration or termination of this Agreement.

Deleted: 2

8. REMEDIES.

Recipient agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information of Discloser will cause irreparable harm and significant injury to Discloser, the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, Recipient agrees that Discloser, in addition to any other available remedies, shall have the right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement without the necessity of posting any bond or other security. Recipient shall notify Discloser in writing immediately upon Recipient's becoming aware of any such breach or threatened breach.

| MTI | Page 3 of 5 | Mutual Confidentiality Agreement #10-014 rev 11-1-05 |
| --- | --- | --- |
| oc-325578 v2 | | |

9. RETURN OF MATERIALS.

Upon written request, (a) Recipient, upon written request from Discloser, shall promptly return to Discloser, or, at Discloser's request destroy, all materials (in written, electronic or other form) containing or constituting Proprietary Information of Discloser, including any copies and extracts thereof, and (b) Recipient shall not use such Proprietary Information in any way for any purpose.

| MTI | Page 4 of 5 | Mutual Confidentiality Agreement |
|---|---|---|
| | | #10-014 rev 11-1-05 |
| oc-325578 v2 | | |

10. **BUSINESS RELATIONSHIPS.**

Each party acknowledges that the other party's employees and contractors are valuable business assets. Each party agrees that, during the period until the Purpose is completed and for one (1) year thereafter, it shall not (for itself or any third party) divert or attempt to divert from the other party any employee or contractor, through solicitation or otherwise; provided, that the foregoing shall not prevent the hiring of an employee through the engagement of a recruiting firm or a public general advertisement, to the extent that such efforts are not specifically directed at employees of the other party.

11. **MISCELLANEOUS.**

(a)    This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior or contemporaneous representations, negotiations, conditions, communications and agreements, whether oral or written, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom.

(b)    No amendment, modification or waiver of any provision of this Agreement shall be effective unless in writing and signed by duly authorized signatories of both parties.

(c)    The waiver by either party of a default under any provision of this Agreement shall not be construed as a waiver of any subsequent default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy.

(d)    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, USA, without reference to its conflicts of laws provisions. Should legal action arise concerning this Agreement, the prevailing party shall be entitled to recover all reasonable attorneys' fees and related costs, in addition to any other relief which may be awarded by any court or other tribunal of competent jurisdiction.

(e)    This Agreement and the rights and obligations hereunder may not be assigned or delegated by either party, in whole or part, whether voluntarily, by operation of law, change of control or otherwise, without the prior written consent of the other party. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

(f)    In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be invalid or unenforceable, the remaining portions hereof shall remain in full force and effect and such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties and shall be reformed to the extent necessary to make such provision valid and enforceable.

(g)    The parties are independent contractors, and neither party shall have any authority of any kind to bind the other party in any respect whatsoever.

(h)    Each party shall comply with all applicable laws and regulations in connection with any acts or omissions under or relating to this Agreement, including, without limitation, all laws and regulations relating to the export of technical data or products.

(i)    This agreement may be signed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

| MTI | Page 5 of 5 | Mutual Confidentiality Agreement |
|-----|-------------|----------------------------------|
| oc-325578 v2 | | #10-014 rev 11-1-05 |

**Deleted:** Each party agrees that, during the period until the Purpose is completed and for one (1) year thereafter, it shall not (for itself or for any third party) divert or attempt to divert from the other party any employee or contractor, through solicitation or otherwise.

**Deleted:** However, each party understands and acknowledges that certain employees, regardless of whether deemed critical to Recipient, are looking for jobs and have already contacted or may contact FusionStorm for possible employment. FusionStorm shall not be restricted from hiring any such employee.

**Formatted:** Font: (Default) Times New Roman, 12 pt

MTI Technology Corporation                     FusionStorm

By: _____      By: _____
              (signature)                              (signature)
Date: 6.19.07                       Date: 6-19-07

Name: SCOTT POTERACKI            Name: John Varel
              (print)                              (print)

Title: CFO                          Title: CEO

| MTI | Page 2 of 5 | Mutual Confidentiality Agreement |
|-----|-------------|-----------------------------------|
| oc-325571 v2 | | #10-014 rev 11-1-05 |

# CLAIM NO. 63

FORM B10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
| CENTRAL DISTRICT OF CALIFORNIA | |

| Name of Debtor | Case Number |
| MTI Technology Corporation | 07-13347 *ES* |

**FILED**

NOV 13 2007

07-13347

18472342

THIS SPACE IS FOR COURT USE ONLY

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
CHRISTOPHER M. BUTTS

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and Address where notices should be sent:
CHRISTOPHER M. BUTTS
~~3033 LA SELVA ST. #202~~
~~SAN MATEO, CA 94403-2135~~
350 C STREET
REDWOOD CITY CA 94063

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☒ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone Number: 650-585-6705

Last four digits of account or other number by which creditor identifies debtor:

Check here if ☐ replaces
this claim ☐ amends       a previously filed claim, dated:_____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☒ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: 4364
  Unpaid compensation for services performed
  from 04/01/2007 to 07/20/2007
     (date)         (date)

**2. Date debt was incurred:** 7/20/07

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☒ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority
Amount entitled to priority $5,202.92
Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).
☒ Wages, salaries, or commissions (up to $10,950,* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle ☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**5. Total Amount of Claim at Time Case Filed:** $_____  _____  5202.92  $5,202.92
                                              (unsecured) (secured) (priority) (Total)
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
| 11/1/07 | [signature] |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

020041

Q3

Huan Huynh
MTI Technology Corp.
17595 Cartwright Road
Irvine CA  92614

August 9, 2007

Huan,

I have received the packet from Sandy with my final paycheck – I am returning to you
the building access card that I had remaining in my possession.

Also, I wanted to know when to expect payment for commissions from last quarter and
my expenses.  Summarized:

Commissions from 4/1/07 to 6/30/07, amount $4,160.92 per Wells Fargo Statement (paid
and reversed).

| | | |
|---|---|---|
| 07/20/07 | MTI TECHNOLOGY C REVERSAL 070720 710010652517TWJ BUTTS,CHRISTOPHER M 9111111101 710010652517TWJ | $4,160.92 |
| 07/20/07 | MTI TECHNOLOGY C PAYROLL 070720 295009180781TWJ BUTTS,CHRISTOPHER M 9111111101 295009180781TWJ | +$1,410.20 |
| 07/20/07 | MTI TECHNOLOGY C PAYROLL 070720 295009180782TWJ BUTTS,CHRISTOPHER M 9111111101 295009180782TWJ | +$4,160.92 |

Expenses as follows:
$50 cell phone bill from June
$500 iPhone expense (from contest in Q1 when Frank Viggiano awarded his prize to me.
Pat Trimarco then metioned that I had to order the phone and expense it, which I did and
she approved).
Approx $480 for travel, room/board & meals for trip to Irvine 7/17 to 7/19/07.  I included
the expense report on the last package I had mailed to you with items owed to MTI
(laptop power cord, price lists, etc).

Please let me know at your earliest convenience when I can expect final payment for
commissions and expenses.  Also please note my new contact info/home address.

350 C Street
Redwood City CA  94063
650-585-6705

Regards,


Chris Butts

Total claim for unpaid commissions and expenses - $5,202.92

Summary:

$4,160.92 for commissions (4/1/07 to 6/30/07)
My commissions have been paid for sales in previous quarter at a rate of .005 on Gross
Product Margin. I've included Wells Fargo bank statement with deposit and reversal by
MTI on 7/20/07.

-Included emails outlining the plan.

$500 for Apple iPhone expense
Around February/March of 2007 I won an award for an iPhone. Per email from Pat
Trimarco (Executive Assistant to President/CEO) I was to purchase the phone myself and
expense it – she approved such transaction per verbal agreement.

$50 for June cell phone bill
MTI covered $50/month for cell phone expenses. Submitted June bill on or around
7/11/07, approved via email by John Maxwell (my direct manager)

$492 for expenses occurred while in Irvine CA
I was to come to the Corporate office for training 7/17 to 7/19/07. These expenses cover
hotel, meal and travel. Trip arranged by MTI Corporate Travel (Allison Hershey) and
John Maxwell. Past trips to Irvine were expensed and paid.

Attached are related documents for the expenses – expense reports & receipts.

Also included letter sent via Certified Mail to Huan Hyung, Director of HR on 8/9/2007

**Sprint**

| Customer | Account Number | Bill Period | Bill Date | Page |
|---|---|---|---|---|
| CHRIS BUTTS | 0035934518-4 | Mar 29 - Apr 28 | Apr 29, 2007 | 1 of 11 |

## Your Sprint Bill

### Balance Summary

| | | Notes |
|---|---|---|
| Previous Balance | $68.27 | |
| Payment On Apr 24 | -68.27 | |
| | $0.00 | |

| | |
|---|---|
| Monthly Service Charges | $59.99 |
| Additional Usage Charges & Purchases | 8.84 |
| Taxes, Surcharges & Fees | 4.20 |
| | $73.03 |

**Total Due: $73.03**
Your credit card will be charged on May 25

### Total Minutes Used

| | In Plan | Used |
|---|---|---|
| Anytime Minutes | Flexible | 450.0 |
| Night & Weekend Minutes | Unlimited | 274.0 |
| Sprint Mobile to Mobile | Unlimited | 80.0 |
| | | 804.0 |

### Questions about your bill?

You can contact us:

On the Web: www.sprintpcs.com
By phone: 1-888-211-4727

Use your Sprint Phone:
Dial *2 to contact Customer Service
Dial *3 to make a one-time payment
Dial *4 to receive account information

**Sprint**

Do not send cash.
Questions? Call 1-888-211-4727          0106

#BWNGMZW AUTO** SCH 3-DIGIT 940
#0035934518 4#
00028240 01 AT 0.308 02  78

CHRIS BUTTS
3033 LA SELVA ST APT 202
SAN MATEO CA 94403-2135

Account Number: 0035934518-4



$73.03

**Earnings Statement** 

| CO. FILE DEPT. CLOCK VCHR. NO. 078 |
| 007651-65-540    0080270017 |

*MTI TECHNOLOGY CORPORATION*
*17595 CARTWRIGHT RD.*
*IRVINE, CA 92614*
*(949) 251-1101*

Period Beginning: 06/18/2007
Period Ending: 07/01/2007
Pay Date: 07/05/2007

Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 3
  State: 1

0000000017
**CHRISTOPHER M BUTTS**
**3033 LA SELVA ST.**
**#202**
**SAN MATEO, CA 94403**

Social Security Number: XXX-XX-4384

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 24.0385 | 56.00 | 1,346.16 | 23,230.80 |
| Sick | 24.0385 | 24.00 | 576.92 | 576.92 |
| Bonus | | | | 7,500.00 |
| Commission | | | | 10,453.00 |
| Holiday | | | | 807.70 |
| Misc Tfb | | | | 32.13 |
| **Gross Pay** | | | **$1,923.08** | 42,600.55 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Sick Balance | | 217.54 |
| Vac Balance | | 240.00 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -204.96 | 6,793.16 |
| | Social Security Tax | -118.05 | 2,624.74 |
| | Medicare Tax | -27.61 | 613.85 |
| | CA State Income Tax | -74.14 | 2,477.70 |
| | CA SUI/SDI Tax | -11.43 | 254.01 |
| | **Other** | | |
| | Checking 2 | -1,410.20 | |
| | Medical | -19.00* | 266.00 |
| | 401(K) | -57.69* | 1,277.01 |
| | Misc | | 32.13 |
| | **Net Pay** | **$0.00** | |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$1,846.39



©1998, 2006, ADP, Inc. All Rights Reserved

Wells Fargo Account Activity                                             Page 1 of 3



Product Search

## Account Activity

### CHECKING XXX-XXX0269

| | |
|---|---|
| Ending balance as of last business day (08/16/07) | $6,857.78 |
| Available balance | $6,837.78 |
| View Online Statements | |

### Transactions - All Activity

Show    All Activity                          [ View ]

        Advanced Search

| Date | Description | Amount |
|---|---|---|
| 08/17/07 | ATM/POS ACTIVITY | $20.00 (pending) |
| 08/16/07 | E*TRADE ACH TRNSFR███████████████████ | $2,000.00 |
| 08/16/07 | E*TRADE ACH TRNSFR███████████████████ | $3,000.00 |
| 08/16/07 | ING DIRECT DEPOSIT██████████BUTTS,CHRIS 1510394779 | +$2,000.00 |
| 08/15/07 | FUSIONSTORM PAYROLL████████████BUTTS, CHRISTOPHER | +$1,306.83 |
| 08/15/07 | FUSIONSTORM PAYROLL████████████BUTTS, CHRISTOPHER | +$3,222.92 |
| 08/09/07 | T.M.C.C LOAN PMT██████████████Christopher Butts 4953775816 | $261.18 |
| 08/08/07 | ATM DEPOSIT - 288 KING STREET SAN FRANCISCO CA 8721 | +$3,778.40 |
| 08/03/07 | NON-WELLS FARGO ATM TRANSACTION FEE | $2.00 |
| 08/03/07 | ATM WITHDRAWAL - 143 Topsfield RWENHAM VILWenham MA 8721 | $42.00 |
| 08/01/07 | ING DIRECT WITHDRAWAL██████████BUTTS,CHRIS████████ | $100.00 |
| 07/27/07 | MBNA ONLINE PYMT ONLINE PMT 070727███████████ BUTTS,CHRISTOPHER███████████ | $1,275.10 |
| 07/25/07 | DISCOVER E-PAYMENT████████████BUTTS CHRISTOPHE █████████ | $73.01 |
| 07/24/07 | MBNA ONLINE PYMT ONLINE PMT 070724████████████S | $15.00 |
| 07/20/07 | PACIFIC GAS/ELEC ONLINE PMT██████████GIVENNAME: CHRIS SN██ | $12.84 |
| 07/20/07 | MTI TECHNOLOGY C REVERSAL 070720 710010652517TWJ BUTTS,CHRISTOPHER M 9111111101 710010652517TWJ | $4,160.92 |
| 07/20/07 | MTI TECHNOLOGY C PAYROLL 070720 295009180781TWJ BUTTS,CHRISTOPHER M 9111111101 295009180781TWJ | +$1,410.20 |
| 07/20/07 | MTI TECHNOLOGY C PAYROLL 070720 295009180782TWJ BUTTS,CHRISTOPHER M 9111111101 295009180782TWJ | +$4,160.92 |
| 07/19/07 | CHECK CRD PURCHASE 07/17 PEETS SFO #2 SAN FRANCISCO CA | $5.30 |

**mti**

NAME: **Chris Butts**

LOCATION: **Irvine CA**

**EXPENSE REPORT**

PERIOD ENDING
**7/14/2007**

PURPOSE OF TRAVEL

| EXPENSES TO BE REIMBURSED | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DAY OR WEEK AND DATE | Sun 07/08 | Mon 07/09 | Tue 07/10 | Wed 07/11 | Thu 07/12 | Fri 07/13 | Sat 07/14 | TOTALS |
| MILEAGE DETAILS (# OF MILES) | | | | | | | | |
| * FROM (CITY) | | | | | | | | |
| * TO (CITY) | | | | | | | | |
| * TO (CITY) | | | | | | | | |
| * TO (CITY) | | | | | | | | |
| * TOTAL AUTO MILEAGE | | | | | | | | |
| HOTELS & MEALS (including tips) | | | | | | | | |
| * HOTEL | | | | | | | | |
| PERSONAL * BREAKFAST | | | | | | | | |
| EXPENSES * LUNCH | | | | | | | | |
| * DINNER | | | | | | | | |
| * | | | | | | | | |
| EXPENSES * BREAKFAST | | | | | | | | |
| FOR OTHER * LUNCH | | | | | | | | |
| * * DINNER | | | | | | | | |
| EXPLAIN * ENTERTAINMENT | | | | | | | | |
| BELOW * | | | | | | | | |
| TRANSPORTATION | | | | | | | | |
| * MILEAGE/MILE RATE | | | | | | | | |
| * PARKING | | | | | | | | |
| * TOLLS | | | | | | | | |
| * AUTO RENTAL | | | | | | | | |
| * AIRLINE FARE | | | | | | | | |
| * BUS LIMO TAXI RAIL | | | | | | | | |
| * | | | | | | | | |
| MISCELLANEOUS | | | | | | | | |
| * TELEPHONE FACSIMILE | | | | | | 50.00 | | 50.00 |
| * TIPS | | | | | | | | |
| * iphone | | | | | | 500.00 | | 500.00 |
| * | | | | | | | | |
| TOTAL EXPENSES TO BE REIMBURSED | | | | | | | | 550.00 |

| EXPLANATION OF EXPENSES FOR OTHERS | | | | |
|---|---|---|---|---|
| DATE | PLACE | COMPANY | NAME & TITLE | BUSINESS PURPOSE |
| | | | | |

SIGNATURE _____

APPROVED BY _____        APPROVED BY _____

APPROVED BY _____        APPROVED BY _____

| WORKING FUND | |
|---|---|
| CASH ON HAND (See Last Report) | |
| ADDITIONAL CASH RECEIVED | |
| TOTAL ADVANCE FUNDS TO DATE | |
| EXPENSES PAID THIS WEEK | 550.00 |
| BALANCE | 550 |

**mti**

## EXPENSE REPORT

NAME: **Chris Butts**

LOCATION: **Irvine CA**

PERIOD ENDING
**7/20/2007**

**PURPOSE OF TRAVEL**

**EXPENSES TO BE REIMBURSED**

| DAY OR WEEK AND DATE | Sat 07/14 | Sun 07/15 | Mon 07/16 | Tue 07/17 | Wed 07/18 | Thu 07/19 | Fri 07/20 | TOTALS |
|---|---|---|---|---|---|---|---|---|
| **MILEAGE DETAILS (# OF MILES)** | | | | | | | | |
| • FROM (CITY) | | | | | | | | |
| • TO (CITY) | | | | | | | | |
| • TO (CITY) | | | | | | | | |
| • TO (CITY) | | | | | | | | |
| • TOTAL AUTO MILEAGE | | | | | | | | |
| **HOTELS & MEALS (including tips)** | | | | | | | | |
| • HOTEL | | | | | | | | |
| PERSONAL • BREAKFAST | | | | | | | | |
| EXPENSES • LUNCH | | | | 8.45 | 12.70 | 376.21 | | 397.36 |
| • DINNER | | | | 27.00 | 15.99 | | | 42.99 |
| • | | | | | | | | |
| EXPENSES • BREAKFAST | | | | | | | | |
| FOR OTHER • LUNCH | | | | | | | | |
| • • DINNER | | | | | | | | |
| EXPLAIN • ENTERTAINMENT | | | | | | | | |
| BELOW • | | | | | | | | |
| **TRANSPORTATION** | | | | | | | | |
| • MILEAGE/MILE RATE | | | | | | | | |
| • PARKING | | | | | | 39.00 | | 39.00 |
| • TOLLS | | | | | | | | |
| • AUTO RENTAL | | | | | | | | |
| • AIRLINE FARE | | | | | | | | |
| • BUS LIMO TAXI RAIL | | | | 12.65 | | | | 12.65 |
| • | | | | | | | | |
| **MISCELLANEOUS** | | | | | | | | |
| • TELEPHONE FACSIMILE | | | | | | | | |
| • TIPS | | | | | | | | |
| • | | | | | | | | |
| • | | | | | | | | |
| **TOTAL EXPENSES TO BE REIMBURSED** | | | | 48.10 | 28.69 | 415.21 | | 492.00 |

**EXPLANATION OF EXPENSES FOR OTHERS**

| DATE | PLACE | COMPANY | NAME & TITLE | BUSINESS PURPOSE |
|---|---|---|---|---|
| | | | | |

SIGNATURE _____

APPROVED BY _____     APPROVED BY _____

APPROVED BY _____     APPROVED BY _____

| WORKING FUND | |
|---|---|
| CASH ON HAND (See Last Report) | |
| ADDITIONAL CASH RECEIVED | |
| TOTAL ADVANCE FUNDS TO DATE | |
| EXPENSES PAID THIS WEEK | 492.00 |
| BALANCE | 492 |



**IRVINE**
**2701 MAIN ST.**
**IRVINE, CA. 92614**
**949-757-1200**

GUEST FOLIO

Thank you for selecting Courtyard by Marriott. We trust that your
experience with us has included warm and gracious service, and the
type of accommodations expected.

We look forward to serving you again on future trips. For additional
reservations, call our toll-free reservation number, (800) 321 2211.

**IRVINE Courtyard Staff**

| | | | |
|---|---|---|---|
| GUEST NAME | C. BUTTS | ROOM | 227    TYJE |
| | | ROOM TYPE | GENR    05554275 |
| | | NO. OF GUESTS | 1 |
| | MTI | RATE | 169.00 |
| | | CLERK | |

| | | | | | |
|---|---|---|---|---|---|
| ARRIVE | 17Jul07 | TIME | 03:30p | DEPART | 19Jul07    TIME    FOLIO #    L9-61771 |

| DATE | REFERENCE NUMBER | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|---|
| 17Jul07 | EP227 | MTI TECHNOLOGY | 169.00 | |
| 17Jul07 | T3227 | CITY TAX | 13.52 | |
| 17Jul07 | T5227 | LOCAL BID FEE | 3.38 | |
| 17Jul07 | TW227 | Calif/Local Touris | .08 | |
| 18Jul07 | PB001 | Market Beer | 3.02 | |
| 18Jul07 | TX001 | Restaurant Tax | .23 | |
| 18Jul07 | PU002 | Market Sundries | .93 | |
| 18Jul07 | TX002 | Restaurant Tax | .07 | |
| 18Jul07 | EP227 | MTI TECHNOLOGY | 169.00 | |
| 18Jul07 | T3227 | CITY TAX | 13.52 | |
| 18Jul07 | T5227 | LOCAL BID FEE | 3.38 | |
| 18Jul07 | TW227 | Calif/Local Touris | .08 | |
| 19Jul07 | MC227 | Master Card | | 376.21- |

```
*********************      *******************************************
* THIS CARD WAS    *      *  CARD #: MCXXXXXXXXXXXX4691/XXXX    *
* ELECTRONICALLY   *      *  Amount:   376.21   Auth: 02592B  *
* SWIPED ON 17Jul07 *     *     ** Signature on File  **       *
*********************      *******************************************
```

**              **    BALANCE    **                    .00**

Marriott Rewards Club Member: XXXXX7726.   Retain this receipt for your records.

### Latest News From Marriott Rewards

Customize Your Stay at Marriott!
Create or update your profile on MarriottRewards.com.
Simply sign in to access your online account and provide us
your preference information so that we may serve you better.

GUEST SIGNATURE_____

COURTYARD RESERVATIONS (800) 321 2211

www.atonerstrinity.com 0 2794 rev. d PG

A WAWER INLANDS CUISINE
2568 MAIN ST STE M
IRVINE, CA. 92614 6241
949-474-1976

### Sale

Server: 1
ID: 00105400008000068094500
07-17-07
                                          11:04:43

MASTERCARD
XXXXXXXXXXXX4691
Appr Code: 005478    Invoice#: 000003
Total:
                            $ 8.45

Customer Copy
THANK YOU!



Receipt

SFO Int'l Ai
P.O. BOX 809
San Francisc

SFO

LOT DO Garage
Exit 202

from:        07/17/07 05:05
to:          07/19/07 14:
Amount to Pay:  $39.0
Master Card
xxxx xxxx xxxx 4

RECEIPT



Prepared for:   CHRISTOPHER BUTTS

August 2007 Statement
Credit Line:                $22,400.00
Cash or Credit Available:   $20,422.16

WorldPoints ✷

### Customer Service
For Information on Your Account Visit:
www.bankofamerica.com
Mail Payments to:
BANK OF AMERICA
P.O. BOX 15716
WILMINGTON, DE 19886-5719
Mail Billing Inquiries to:
BANK OF AMERICA
P.O. BOX 15026
WILMINGTON, DE 19850-5026
Call toll-free 1-800-826-2559
TDD hearing-impaired 1-800-346-3178

### Account Information

| Summary of Transactions | | | Billing Cycle and Payment Information | |
|---|---|---|---|---|
| Previous Balance | | $1,290.10 | Days in Billing Cycle | 30 |
| Payments and Credits | - | $1,290.10 | Closing Date | 08/02/07 |
| Cash Advances | | $0.00 | | |
| Purchases and Adjustments | + | $1,962.46 | Payment Due Date | 08/24/07 |
| Periodic Rate Finance Charges | + | $15.38 | Current Payment Due (regular) | $35.00 |
| Transaction Fee Finance Charges | + | $0.00 | Past Due Amount | $0.00 |
| New Balance Total | | $1,977.84 | Total Minimum Payment Due (Reduced Payment) | $15.00 |

### Transactions

| Payments and Credits | Posting Date | Transaction Date | Reference Number | Account Number | Category | Amount |
|---|---|---|---|---|---|---|
| PAYMENT - NET ACCESS | 07/23 | | | | | 15.00CR |
| PAYMENT - NET ACCESS | 07/27 | | | | | 1,275.10 CR |

| Purchases and Adjustments | | | | | | |
|---|---|---|---|---|---|---|
| SOTOI SUBWAY      OAKLAND  CA | 07/09 | 07/07 | 0025 | 4691 | C | 7.66 |
| APL ITUNES      888-712-7753 CA | 07/14 | 07/13 | 5974 | 4691 | C | 48.74 |
| WIENERSCHNITZEL#140 Q NORTH HIGHLANCA | 07/16 | 07/14 | 0042 | 4691 | C | 7.70 |
| A GREEK ISLANDS CUISIN IRVINE   CA | 07/18 | 07/17 | 1545 | 4691 | C | 8.45 |
| BAJA FRESH 10008   IRVINE   CA | 07/19 | 07/18 | 0562 | 4691 | C | 12.70 |
| DAVE & BUSTERS #14   IRVINE   CA | 07/20 | 07/19 | 2844 | 4691 | C | 80.84 |
| COURTYARD BY MARRIOTT - IRVINE   CA | 07/21 | 07/19 | 6479 | 4691 | C | 270.21 |
| ARRIVAL DATE 7/17/07 | | | | | | |
| CENTRAL PARKING 100068 SAN FRANCISCOCA | 07/21 | 07/19 | 3700 | 4691 | C | 39.00 |
| USPS 0567569550   SAN CARLOS  CA | 07/23 | 07/21 | 4762 | 4691 | C | 19.20 |
| THE HOME DEPOT 626   SAN CARLOS CA | 07/23 | 07/21 | 7464 | 4691 | C | 10.19 |
| SPRINT WIRELESS SVCS 800-639-6111 CO | 07/23 | 07/21 | 0948 | 4691 | C | 74.93 |
| TARGET   00011221 SAN MATEO  CA | 07/23 | 07/22 | 5782 | 4691 | C | 62.20 |
| APL APPLEONLINESTOREUS 800-676-2775 CA | 07/23 | 07/23 | 3687 | 4691 | C | 540.17 |
| CALTRAIN TVM    SAN CARLOS  CA | 07/25 | 07/23 | 7906 | 4691 | C | 5.00 |
| SNEAKERS PUB & GRILL  SAN CARLOS  CA | 07/25 | 07/23 | 4953 | 4691 | C | 35.00 |
| CTY OF REDWOOD CTY-RS 6507807070  CA | 07/25 | 07/24 | 0071 | 4691 | C | 100.00 |
| MCDONALDS F6941 Q17 SAN CARLOS  CA | 07/26 | 07/24 | 0497 | 4691 | C | 17.56 |
| CALIFORNIA YELLOW CAB  SANTA ANA  CA | 07/27 | 07/17 | 0007 | 4691 | C | 12.65 |
| USPS CHANGE OF ADDRESS 800-238-3150 TN | 07/27 | 07/26 | 7227 | 4691 | C | 1.00 |
| TMOBILE HOTSPOT   800-981-8563 TX | 07/28 | 07/27 | 9400 | 4691 | C | 9.99 |
| PAY LAKE PINES UDRT  888-269-5977 CA | 08/02 | 08/02 | 8817 | 4691 | C | 485.47 |

WORLDPOINTS
    1,963  MONTHLY EARNINGS
        0  BONUS POINTS THIS MONTH
   13,454  POINTS AVAILABLE

| Creditor:    (19474338)<br>CHRISTOPHER M BUTTS    History<br>350 C ST.<br>REDWOOD CITY, CA 94063 | Claim No: 63<br>Filed:    11/13/2007<br>Entered: 11/21/2007 | Status:<br>Filed by: CR<br>Entered by: Joseph, Susan<br>Modified: |
|---|---|---|

| Unsecured claimed:  $5202.92 |
|---|
| **Total**    **claimed: $5202.92** |

| History:<br>⊚ 63-1    11/13/2007 Claim #63 filed by CHRISTOPHER M BUTTS , total amount claimed: $5202.92<br>      (Joseph, Susan) |
|---|
| Description: |
| Remarks: |

63 ок