1  Scott C. Clarkson, Esq. (CA Bar No. 143271)
   Eve A. Marsella, Esq. (CA Bar No. 165797)
2  Israel Saperstein, Esq. (CA Bar No. 084471)
   **Clarkson, Gore & Marsella, APLC**
3  3424 Carson Street, Suite 350
   Torrance, California  90503
4  Telephone: 310/542-0111
   Facsimile: 310/214-7254
5  Email: sclarkson@lawcgm.com
   Attorneys for Plaintiff MTI Technology Corporation,
6  Debtor-In-Possession

7                   **UNITED STATES BANKRUPTCY COURT**

8          **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

9  | In re: | Case No.  8:07-bk-13347-ES |

10 MTI TECHNOLOGY CORPORATION,              Chapter 11
   A Delaware corporation,
11                                          Adv. No. 8:09-ap-01639-ES
   Debtor and Debtor in Possession.
12 ─────────────────────────────────        **FIRST AMENDED COMPLAINT FOR:**

13 MTI TECHNOLOGY CORPORATION,              **(1) BREACH OF CONTRACT BY**
   A Delaware corporation,                  **FUSIONSTORM;**
14                                          **(2) BREACH OF CONTRACT BY FORMER**
              Plaintiff,                    **MTI EMPLOYEE DEFENDANTS**
15      vs.                                 **(3) BREACH OF FIDUCIARY DUTY;**
                                            **(4) BREACH OF COMMON LAW DUTY OF**
16 FUSIONSTORM, A Delaware corporation;     **LOYALTY;**
   JOHN VAREL, an individual; DANIEL R.     **(5) BREACH OF STATUTORY DUTIES,**
17 SERPICO, an individual, MARC FRANZ, an   **INCLUDING DUTY OF LOYALTY;**
   individual; CHRISTOPHER BUTTS, an        **(6) INTENTIONAL INTERFERENCE WITH**
18 individual; RICHARD BOCCHINFUSO, an      **CONTRACT BY FUSIONSTORM, SERPICO**
   individual; MATTHEW DWYER, an            **AND VAREL;**
19 individual; JUSTIN GRIFFIN, an individual; **(7) INTENTIONAL INTERFERENCE WITH**
   DIMITRIS KREKOUKIAS, an individual;      **CONTRACT BY FORMER MTI EMPLOYEE**
20 ROBERT LINSKY, an individual; ROBERT     **DEFENDANTS**
   OWEN, an individual; HEEKI PARK, an      **(8) INTENTIONAL INTERFERENCE WITH**
21 individual; GREG PRESTININZI, an         **PROSPECTIVE ECONOMIC ADVANTAGE;**
   individual; and, THOMAS TAR, an          **(9)  UNFAIR COMPETITION, BUSINESS &**
22 individual,                              **PROFESSION CODE §17200;**
                                            **(10) VIOLATION OF CALIFORNIA**
23            Defendants.                   **UNIFORM TRADE SECRET ACT; AND**
                                            **(11)  BREACH OF COVENANT OF GOOD**
24                                          **FAITH AND FAIR DEALING BY**
                                            **FUSIONSTORM;**
25                                          **(12)  BREACH OF COVENANT OF GOOD**
                                            **FAITH AND FAIR DEALING BY FORMER**
26                                          **MTI EMPLOYEE DEFENDANTS;**
                                            **(13) OBJECTION TO PROOF OF CLAIM**
27                                          **FILED BY CHRISTOPHER BUTTS (CLAIM**
                                            **NO. 63);**
28                                          **(14) OBJECTION TO PROOF OF CLAIM**

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

FILED BY MARC FRANZ (CLAIM NO. 96);
(15) OBJECTION TO PROOF OF CLAIM
FILED BY ROBERT LINSKY (CLAIM NO.
497);
(16) OBJECTION TO PROOF OF CLAIM
FILED BY ROBERT OWEN (CLAIM NO.
246);
(17) VIOLATION OF THE AUTOMATIC
STAY UNDER 11 U.S.C. § 362;
(18) VIOLATION OF COMPUTER FRAUD
AND ABUSE ACT ("CFAA") -18 U.S.C. § 1030;
(19) VIOLATION OF CALIFORNIA PENAL
CODE SECTION 502(C)(2), (3), (6), (7);
(20) EQUITABLE SUBORDINATION;
(21) AIDING AND ABETTING BREACH OF
FIDUCIARY DUTY;
(22) CONVERSION;
(23) INTENTIONAL INTERFERENCE WITH
CONTRACT BY ALL DEFENDANTS
(24) TURNOVER

Status Conference:
DATE:      March 18, 2010
TIME:      2:00 p.m.
PLACE:     Courtroom 5A

Plaintiff, MTI Technology Corporation, the above-captioned debtor and debtor in possession, ("Plaintiff" or "MTI" or "Debtor"), alleges in its Complaint ("Complaint") against defendants FusionStorm, A Delaware corporation, John Varel, Daniel Serpico, Marc Franz, Christopher Butts,  Richard Bocchinfuso, Matthew Dwyer, Justin Griffin, Dimitris Krekoukias, Robert Linsky, Robert Owen, Heeki Park, Greg Prestininzi, and Thomas Tar (FusionStorm, Varel, Serpico, Franz, Butts, Bocchinfuso, Dwyer, Griffin, Krekoukias, Linsky, Owen, Park, Prestininzi, and Tar are collectively referred to herein as "Defendants") as follows:

## JURISDICTION, VENUE AND PARTIES

1.      The Complaint initiates an adversary proceeding as contemplated by Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.  All of the Claims for Relief in the Complaint are either core proceedings as that term is defined in, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), and (O) or are proceedings arising under title 11 or arising in or related to a case under title 11, as set forth in 28 U.S.C. §157(b)(1) and (b)(4).

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  2.  Pursuant to 28 U.S.C. §§ 1334(b), 157(a), General Order No. 266 entered by the US

2 District Court for the Central District of California on October 9, 1984, and 157(b)(1), the above

3 entitled court (the "Court") has jurisdiction over this adversary proceeding.

4  3.  On October 15, 2007 (the "Petition Date"), MTI filed its voluntary petition for relief

5 under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central

6 District of California, Santa Ana Division, styled In re MTI Technology Corporation, Bankruptcy

7 Case No. 8:07-bk-13347-ES ("MTI's Chapter 11 Case").

8  4.  Pursuant to 28 U.S.C. §1409(a), venue for the prosecution of this adversary

9 proceeding is proper in the above entitled District by virtue of MTI's pending Chapter 11 Case.

10  5.  MTI has standing to prosecute and enforce all claims asserted herein belonging to

11 MTI's bankruptcy estate (the "Estate") pursuant to, without limitation, 11 U.S.C. §§ 541(a)(1),

12 541(a)(3), and 1107(a).

13  6.  By filing a Proof of Claim against the Estate, each of Defendants Christopher Butts,

14 Marc Franz, Robert Owen, and Robert Linsky have waived any right to a jury trial that they may

15 have had.

16           **THE PARTIES**

17  7.  Plaintiff is informed and believes, and on that basis alleges, that at all times

18 mentioned herein, Defendant FusionStorm is a corporation organized and existing under the laws

19 of the State of Delaware, having a principal place of business in San Francisco, California, as well

20 as a business office in Irvine, California ("FusionStorm").

21  8.  Plaintiff is informed and believes, and on that basis alleges, that at all times

22 mentioned herein, Defendant John Varel ("Varel") is an individual who resides in Maui, Hawaii

23 and San Francisco, California. Plaintiff further believes that Varel is, and was at all times relevant,

24 the Chairman of the Board and Chief Executive Officer of FusionStorm and that as Chief

25 Executive Officer, Varel is responsible for the operations of FusionStorm.

26  9.  Plaintiff is informed and believes, and on that basis alleges, that at all times

27 mentioned herein, Defendant Daniel R. Serpico ("Serpico") is an individual who resides in San

28 Francisco, California. Plaintiff further believes that Serpico is, and was at all times relevant, the

1    Chief Financial Officer, and a director, of FusionStorm and that as Chief Financial Officer,

2    Serpico is responsible for the operations of FusionStorm.

3          10.    Plaintiff is informed and believes, and on that basis alleges, that at all times

4    mentioned herein, Defendant Marc Franz ("Franz") is an individual residing in the County of

5    Orange, in the State of California. Plaintiff is further informed and believes that Franz is currently

6    employed as a sales representative of FusionStorm and that Franz works out of FusionStorm's

7    Irvine office.

8          11.    Plaintiff is informed and believes, and on that basis alleges, that at all times

9    mentioned herein, Defendant Christopher Butts, ("Butts") is an individual residing in the City of

10    Redwood, in the State of California and that Butts is currently employed by FusionStorm.

11          12.    Plaintiff is informed and believes, and on that basis alleges, that at all times

12    mentioned herein, Defendant Richard Bocchinfuso, ("Bocchinfuso") is an individual residing in

13    the City of Manalapan, in the State of New Jersey and that Bocchinfuso is currently employed by

14    FusionStorm.

15          13.    Plaintiff is informed and believes, and on that basis alleges, that at all times

16    mentioned herein, Defendant Matthew Dwyer, ("Dwyer") is an individual residing in the City of

17    Princeton, in the State of New Jersey and that Dwyer is currently employed by FusionStorm.

18          14.    Plaintiff is informed and believes, and on that basis alleges, that at all times

19    mentioned herein, Defendant Justin Griffin, ("Griffin") is an individual residing in Little Silver, in

20    the State of New Jersey and that Griffin is currently employed by FusionStorm.

21          15.    Plaintiff is informed and believes, and on that basis alleges, that at all times

22    mentioned herein, Defendant Dimitris Krekoukias ("Krekoukias") is an individual residing in Elk

23    Grove Village, in the State of Illinois and that Krekoukias is currently employed by FusionStorm.

24          16.    Plaintiff is informed and believes, and on that basis alleges, that at all times

25    mentioned herein, Defendant Robert Linsky ("Linsky") is an individual residing in the City of

26    Hewlett, in the State of New York and that Linsky is currently employed by FusionStorm.

27          17.    Plaintiff is informed and believes, and on that basis alleges, that at all times

28    mentioned herein, Defendant Robert Owen ("Owen") is an individual residing in the City of

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  Hawthorne, in the State of New Jersey and that Owen is currently employed by FusionStorm.

2      18.    Plaintiff is informed and believes, and on that basis alleges, that at all times

3  mentioned herein, Defendant Heeki Park ("Park") is an individual residing in the City of Edison,

4  in the State of New Jersey and that Park is currently employed by FusionStorm.

5      19.    Plaintiff is informed and believes, and on that basis alleges, that at all times

6  mentioned herein, Defendant Greg Prestininzi ("Prestininzi") is an individual residing in the City

7  of Shrewsbury, in the State of New Jersey and that Prestininzi is currently employed by

8  FusionStorm.

9      20.    Plaintiff is informed and believes, and on that basis alleges, that at all times

10  mentioned herein, Defendant Thomas Tar ("Tar") is an individual residing in the City of Denville,

11  in the State of New Jersey and that Tar is currently employed by FusionStorm.

12      21.    Defendants Tar, Prestininzi, Park, Owen, Linsky, Krekoukias, Griffin, Dwyer,

13  Butts, and Bocchinfuso were all former MTI employees employed in MTI's East Coast Division

14  ("East Coast Division"), which was  comprised of several primary teams, including the New York

15  and New Jersey team (sometimes also knows as the Mid-Atlantic team), the Virginia team and the

16  New England team.

17  **GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

18      22.    MTI was founded in 1987. In 1994, it became a publically-traded company on the

19  NASDAQ, until 2007.  By 2007, MTI was a global provider of infrastructure solutions for the

20  management and storage of electronic data ubiquitous in computers of mid to large size

21  companies.

22      23.    At all times relevant herein, MTI had its headquarters in Orange County,

23  California, but maintained offices throughout the country, including New Jersey.

24      24.    For more than 20 years, MTI operated its business of delivering high-performance

25  data storage solutions to customers with mid- to- large scale computer information systems.  For

26  its customers, MTI designed, constructed, and serviced fully integrated solutions for the

27  management, storage, backup, and retrieval of electronic data used in computer systems.

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

25.     MTI purchased from suppliers and resold to its customers specialized data storage equipment.  In addition, MTI obtained licenses for specialized software from suppliers and sold the software to its customers, who executed the software licenses directly with the supplier.

26.     Regularly, MTI added value to the re-sold specialized equipment and the re-sold specialized software by assessing customers' computer data storage system requirements, designing customized configurations for the resold hardware, and providing installation, technical support, and maintenance services, to assure that all systems and equipment functioned properly.

**MTI'S STRATEGIC 20-YEAR PROCESS FOR CUSTOMER ACQUISITION AND RETENTION ENABLED MTI TO DEVELOP ITS HIGHLY SKILLED AND TRAINED EAST COAST DIVISION, WHICH BECAME ONE OF ITS MOST PROFITABLE DIVISIONS.**

27.     MTI invested a great deal of time, money (in excess of several million dollars per year) and effort developing its extensive and lengthy customer list and client acquisition.  MTI had undertaken and developed a formalized and sophisticated process for customer acquisition and retention over a 20-year period. As part of this process, in 2003, MTI shifted its business focus plan to aggressively pursue a unique partner-relationship with EMC Corporation ("EMC") for the exclusive sale of EMC products, as follows:

a. Employing and investing in a highly-skilled telemarketing group to research and generate customer leads;

b. Spending on average $500,000.00 each quarter in marketing and branding the MTI name;

c.  Employing advertising agencies, public relations firms, and industry analysts, and purchasing customer lists at a cost of hundreds of thousands of dollars;

d. Expending countless hours of time and effort to identify, and gain access to decision-makers, relative to each potential customer;

e. Utilizing hundreds of hours of salesperson visits to potential customers, many of which took months, and sometimes years, to acquire;

f. Entertaining potential and present customers;

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

g.  Attending trade shows, seminars, and conferences all over the country;

h.  Entering into an agreement with EMC, at MTI's cost of $800,000.00, for  extensive technical certification of MTI salespeople, technical employees, service people, and systems engineers, in EMC systems and products[1]; and

i.  Building and maintaining an electronic database with customer information unique to each customer's specifications, needs, services, products, maintenance contracts, and systems.

28.    Ultimately, MTI created and molded the East Coast Division, which became its premiere division in terms of generating revenue for MTI.  The team consisted of sales people, technical architects, telemarketers, support staff, engineers, and a vice president/officer (Mr. Bocchinfuso).  This team was able to address every aspect of MTI's customer's needs due to the extensive training and certifications provided by MTI to the team.  Using the process that MTI created and the resources that MTI allocated to obtaining customers, the team was able to ferret out customer leads, make contacts with decision makers, ascertain each customer's needs, define customer pricing, and create quotes for customers detailing pricing, services to be rendered, and product configurations, as well as work out the necessary systems and products, and provide the technical architects and engineers to make the products work for each customer's purpose. The team also obtained from MTI's customers statements of work, which contained the detail regarding the service, delivery, and customer acceptance criteria, as well as obtained special pricing directly from EMC, if needed to win a customer's business in competitive bid environments.  MTI also developed an in-depth source of information that it used to determine which particular businesses might be planning future additions or upgrades to their data storage systems.

29.    In the course of its dealings with its customers, MTI's East Coast Division became knowledgeable and experienced in its customers' operations and developed sophisticated information about each customer's business, such as special needs, customer characteristics, profit

---

[1] In order to do business with EMC, salespeople, technical installers, and technical architects had to undergo an EMC accreditation training program, paid for by the business which sought to enter the EMC product competition.  Such accreditations had to be maintained and recertified on an annual basis.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  margins, maintenance contract renewal dates, and other pertinent information by using MTI's

2  processes and resources.  As a result of MTI's investments in developing this information, the

3  team of the East Coast Division developed into precisely the team that MTI had envisioned that it

4  would create and which would ultimately generate profits for MTI.  All of this information was

5  the product of substantial time and expense invested by MTI, was not generally known to the

6  public, and was not readily ascertainable in the industry.  MTI's customers' names, specialized

7  requirements and patronage were secured by the lengthy process set forth above, at considerable

8  time, effort, and expense to MTI.

9       30.    All of the above actions were investments undertaken by MTI to have its ingenuity

10  and efforts pay off in the free marketplace, with the expectation that those investments would be

11  protected from gratuitous use by competitors.

12       31.    FusionStorm was a competitor in the same market as MTI, attempting to expand

13  into MTI's markets.  Upon information and belief, FusionStorm is a national provider of

14  technology solutions for enterprises of all sizes. FusionStorm provides network security, enterprise

15  storage, wireless telecommunication services, hardware and software procurement, system

16  engineering, technical support services, network hardware and software solutions.  MTI is

17  informed and believes FusionStorm was seeking to aggressively expand its sales of EMC data-

18  storage solutions and targeted MTI employees for this purpose.

19       32.    In 2007, MTI was EMC's eighth largest partner and was its third largest VAR

20  ("Value Added Re-Seller") purchasing up to $80 million annually from EMC.  As a result of this

21  position with EMC, MTI purchase directly from EMC and could obtain better pricing and benefits

22  for its customers than smaller companies, such as FusionStorm, who were required to purchase

23  EMC products through a third party distributor.  Moreover, to achieve this positioning with EMC,

24  MTI was required to incur significant costs necessary for the training and certification of its

25  employees, such as those associated with its East Coast Division, to sell and service EMC

26  products.  MTI spent approximately $1,000,000 to train and certify its employees in the East Coast

27  Division for this purpose.

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

## KEY MEMBERS OF MTI'S EAST COAST DIVISION BETRAYED MTI ON
## BEHALF OF FUSIONSTORM

33.    On or about April 2, 2004, MTI hired Richard Bocchinfuso as the Director of Technical Sales / Operations. Bocchinfuso executed a Confidentiality and Nondisclosure Agreement (the "Confidentiality Agreement").  Attached hereto as **Exhibit "A"** is a true and correct copy of the Confidentiality Agreement.  The Confidentiality Agreement contains provisions prohibiting business activities which conflict with his employment.  The Confidentiality Agreement also prohibits the solicitation for employment of MTI's employees on behalf of himself or any third party.  On or about April 18, 2005, Bocchinfuso was promoted to Vice President of Technology Solutions of MTI.  On or about October 25, 2005, Bocchinfuso was promoted to  Chief Technical Officer, Vice President Business Development of MTI by MTI's president, Thomas Raimondi.  On information and belief, Bocchinfuso understood that MTI's president had intended to request that the Board of Directors formally ratify this promotion because it made Bocchinfuso an officer with significant management discretion and involvement, but the Board of Directors did not formally take that action.  Bocchinfuso tendered his resignation on or about July 20, 2007. MTI is informed and believes that Bocchinfuso was immediately thereafter hired by FusionStorm and is currently still employed by FusionStorm.

34.    On or about June 12, 2000, MTI hired Christopher Butts as a Sales Support Account Manager.  Butts executed an Employee/Consultant Proprietary Information Agreement ("Employment Agreement").  Attached hereto as **Exhibit "B"** is a true and correct copy of the Employment Agreement.  The Employment Agreement contains provisions acknowledging that proprietary information was to be held in strict confidence, considered to be privileged and confidential, prohibited him from soliciting for employment or recommend for employment any person employed by MTI, and upon termination, required Butts to surrender all property and material containing MTI's trade secrets, restricted Butts from diverting or attempting to divert from MTI any business of any kind including solicitation or interference with any suppliers or customers, and prohibited Butts from engaging in competition with MTI while making use of MTI's trade secrets. Butts tendered his resignation on July 19, 2007.  MTI is informed and

1  believes that Butts was immediately hired by FusionStorm, and is currently still employed by

2  FusionStorm.

3       35.    On or about September 3, 2004, MTI hired Matthew Dwyer as a Professional

4  Services Consultant. In or about January, 2007, he was promoted to East Director of Technical

5  Architect Manager.  Dwyer executed an offer letter.  On or about October 18, 2004, Dwyer

6  executed a Use & Compliance Agreement Form, a true and correct copy of which is attached

7  hereto as **Exhibit "C."**  In addition, it contains a provision which states, "Do not format or FDISK

8  the hard drive or delete any data."   Dwyer tendered his resignation on July 20, 2007.  MTI is

9  informed and believes that Dwyer was immediately hired by FusionStorm, and is currently still

10  employed by FusionStorm.

11       36.    On or about August 8, 2003, MTI hired Marc Franz as a Sales Representative.

12  Franz executed a Confidentiality and NonDisclosure Agreement, a true and correct copy of which

13  is attached hereto as **Exhibit "D."** On August 27, 2003, Franz executed a Use & Compliance

14  Agreement for use of a MTI laptop, a true and correct copy of which is attached hereto as **Exhibit**

15  **"E"**.  The Use & Compliance Agreement expressly states that upon termination the laptop is to be

16  returned to MTI.  In addition, it contains a provision which states, "Do not format or FDISK the

17  hard drive or delete any data."  Franz tendered his resignation on May 14, 2007.  However, he

18  extended his position to part-time through June 30, 2007.  MTI is informed and believes that Franz

19  was immediately hired by FusionStorm, and is currently still employed by FusionStorm.

20       37.    On or about January 24, 2004, MTI hired Justin Griffin.  Griffin executed a

21  Confidentiality and NonDisclosure Agreement, a true and correct copy of which is attached hereto

22  as **Exhibit "F."** Griffin tendered his resignation on July 20, 2007.  MTI is informed and believes

23  that Griffin was immediately hired by FusionStorm, and is currently still employed by

24  FusionStorm.

25       38.    On or about July 22, 2005, MTI hired Dimitris Krekoukias as a Sales Engineer.

26  Krekoukias executed a Confidentiality and NonDisclosure Agreement, a true and correct copy of

27  which is attached hereto as **Exhibit "G."**  On August 8, 2005, Krekoukias executed a Use &

28  Compliance Agreement, a true and correct copy of which is attached as **Exhibit "H,"** for use of

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1   the MTI laptop.  The Use & Compliance Agreement expressly states that upon termination the

2   laptop is to be returned to MTI.  In addition, there is a provision that states "Do not format or

3   FDISK the hard drive or delete any data."  Krekoukias tendered his resignation on July 20, 2007.

4   MTI is informed and believes that Krekoukias was immediately hired by FusionStorm, and is

5   currently still employed by FusionStorm.

6        39.    On or about October 21, 2002, MTI hired Robert Linsky as the Vice President of

7   Product Management and Marketing.  Linsky executed an Employee Proprietary Information

8   Agreement, a true and correct copy of which is attached hereto as **Exhibit "I."**  Linsky tendered

9   his resignation on July 20, 2007.  MTI is informed and believes that Linsky was immediately hired

10  by FusionStorm, and is currently still employed by FusionStorm.

11       40.    On or about November 17, 2005, MTI hired Robert Owen as a Sales Engineer.

12  Owen executed a Confidentiality and NonDisclosure Agreement, a true and correct copy of which

13  is attached hereto as **Exhibit "J."**  In addition, on January 29, 2007, Owen executed a Use &

14  Compliance Agreement, a true and correct copy of which is attached hereto as **Exhibit "K,"** for

15  use of the MTI laptop.    The Use & Compliance Agreement expressly states that upon termination

16  the laptop is to be returned to MTI.  In addition, it contains a provision that states, "Do not format

17  or FDISK the hard drive or delete any data."  Owen tendered his resignation on July 20, 2007.

18  MTI is informed and believes that Owen was immediately hired by FusionStorm, and is currently

19  still employed by FusionStorm.

20       41.    On or about April 16, 2006, MTI hired Heeki Park as a Senior Implementation

21  Specialist.  Park executed a Confidentiality and NonDisclosure Agreement on November 16,

22  2006, a true and correct copy of which is attached hereto as **Exhibit "L."**  On May 1, 2006, Park

23  executed a Use & Compliance Agreement, a true and correct copy of which is attached hereto as

24  **Exhibit "M,"** for use of the MTI laptop.  Park tendered his resignation on July 19, 2007.  MTI is

25  informed and believes that Park was immediately hired by FusionStorm, and is currently still

26  employed by FusionStorm.

27       42.    On or about September 25, 1995 MTI hired Greg Prestininzi as a Sales

28  Representative.  Prestininzi executed a Consultant/Employee Proprietary Information Agreement,

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  a true and correct copy of which is attached hereto as **Exhibit "N."** On April 1, 2002, Prestininzi

2  executed a Use & Compliance Agreement, a true and correct copy of which is attached hereto as

3  **Exhibit "O,"** for use of the MTI laptop. Prestininzi tendered his resignation on July 19, 2007.

4  MTI is informed and believes that Prestininzi was immediately hired by FusionStorm, and is

5  currently still employed by FusionStorm.

6        43.    On or about November 30, 2004, MTI hired Thomas Tar as an Implementation

7  Specialist. On January 3, 2005, Tar executed a Confidentiality and NonDisclosure Agreement, a

8  true and correct copy of which is attached hereto as **Exhibit "P."** On January 3, 2005, Tar

9  executed a Use & Compliance Agreement, a true and correct copy of which is attached hereto as

10  **Exhibit "Q,"** for use of the MTI laptop. Tar tendered his resignation on July 20, 2007.  MTI is

11  informed and believes that Tar was immediately hired by FusionStorm, and is currently still

12  employed by FusionStorm.

13        44.    As part of their duties as sales representatives, sales engineers, system engineers,

14  telemarketers, implementation specialists, and technical architects, these MTI employees

15  developed business contacts with MTI's customers and employees and other information that were

16  confidential or proprietary information or trade secrets of MTI.  For the purpose of enabling its

17  employees to conduct their employment duties, MTI revealed to its employees necessary

18  confidential or proprietary information and trade secrets, including such information and secrets

19  regarding MTI's customers, and such information and trade secrets included but were not limited

20  to sales volume, profit margins, particular likes and dislikes, system needs, maintenance contracts,

21  and price quotes, which had been developed by MTI.

22        45.    At all times, MTI employees were advised and aware of the confidential nature of

23  the above-referenced information and trade secrets; their offer letters of employment also set forth

24  the proprietary nature of the information they would receive and MTI required that each employee

25  sign an Employment Agreement which contained non-disclosure provisions. Moreover, MTI's

26  employee handbook and Code of Ethics addressed of the proprietary nature and confidentiality

27  issues and of employees' obligations to keep such information confidential and only to use such

28  information for the benefit of MTI.  All of these steps taken by MTI constituted reasonable efforts

1   to maintain the secrecy of MTI's confidential and proprietary information and trade secrets.

2   **FUSIONSTORM'S SCHEME TO RAID MTI'S EMPLOYEES**

3   **FOR THE PURPOSE OF OBTAINING MTI'S EAST COAST BUSINESS**

4         46.     This Complaint targets an unlawful and anti-competitive scheme by FusionStorm

5   to devastate MTI's operations in North America and to obtain MTI's East Coast Division, along

6   with MTI's customers and goodwill, without paying MTI.  On information and belief,

7   FusionStorm schemed to steal MTI's business without paying for it and enlisted, aided and abetted

8   MTI employees and former employees in carrying out that scheme.  MTI's East Coast Division

9   was responsible for a significant portion of MTI's revenues and profits.  FusionStorm knowingly

10  and intentionally recruited and solicited key revenue-generating employees of MTI, and those

11  employees' support staff, comprising the East Coast Division, while simultaneously professing an

12  interest in purchasing or merging with MTI, for the purpose of obtaining access to MTI's internal

13  financial data, and thereby confirming the economic value of MTI's East Coast Division.

14  FusionStorm feigned interest in purchasing or merging with MTI so that FusionStorm could

15  determine how much to pay MTI employees to take the East Coast Division's business to

16  FusionStorm without paying MTI. When the key members of the East Coast Division left MTI,

17  they took MTI's customers, and significantly all of the pending orders that those employees were

18  responsible for, with them.  With the loss of MTI's East Coast Division, MTI lost a significant

19  stream of revenue, which dramatically decreased its cash flow and caused it to implode and to

20  seek Chapter 11 protection within a matter of months after their departure.  Moreover, the loss of

21  the East Coast Division also caused INX, a potential buyer of MTI, to withdraw its $21,000,000

22  offer to purchase MTI.  MTI has concluded that if the East Coast Division stayed with MTI, MTI

23  would not have ended up in this Chapter 11 proceeding.

24        47.     Pursuant to said scheme, Defendants have employed the unfair and unlawful

25  competitive tactics alleged herein to intentionally and deliberately injure MTI's business, to

26  interfere with MTI's business opportunities by unlawfully and unfairly soliciting MTI's customers

27  and employees, and to build FusionStorm's business at MTI's expense. MTI is informed and

28  believes that FusionStorm specifically targeted MTI as the victim of its anti-competitive raid to

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

-13-

1    obtain MTI's firmly established east coast EMC-solutions practice.  This is not the first time that

2    FusionStorm has engaged in the tactics described herein.  On July 15, 2009, PC Specialists, Inc.

3    dba Technology Integration Group ("TIG") filed its "Third Amended Complaint for Damages and

4    Injunctive Relief: (1) Breach of Contract; (2) Breach of Duty of Loyalty; . . . (13) Breach of

5    Fiduciary Duty; (14) Aiding and Abetting Breach of Fiduciary Duty" (the "TIG Complaint")

6    against FusionStorm, John Varel, et al. in the Superior Court of the State of California, County of

7    San Francisco (Case No. CGC07-164358), in which TIG alleged that FusionStorm and certain of

8    the other defendants engaged in an "unlawful and anti-competitive scheme to establish a Tampa

9    [Florida] presence by dismantling TIG's Tampa office, targeting its employees and usurping

10   TIG's business."  TIG Complaint at p. 5, ll. 3 – 5.  Further, TIG alleged, "FusionStorm . . . began

11   collaboration with defendant Dragoni to establish a Tampa office.  Next, FusionStorm and

12   Dragoni, using misappropriated confidential and proprietary information, targeted TIG's best

13   employees and TIG's existing and prospective customers. . . .  [TIG's employees] were

14   encouraged – by Dragoni and FusionStorm – to breach their contractual, statutory and common

15   law duties by, among other things, soliciting other TIG employees to go to FusionStorm, soliciting

16   existing TIG customers and prospective TIG customers to move their business to FusionStorm,

17   and misappropriating TIG's trade secrets."  TIG Complaint at p. 5, ll. 11 - 21.

18          48.    In this case, by targeting and hiring (or attempting to hire) the key players of the

19   East Coast Division, FusionStorm was able to acquire an essentially complete division of a

20   company without paying for it.   Upon leaving MTI and commencing work for FusionStorm, the

21   East Coast Division simply "switched hats" from MTI to FusionStorm.  Those employees were

22   able to hit the ground running, taking their customers with them, with the customers having no

23   interruption of business.  Upon information and belief, MTI believes that MTI's customers were

24   advised by one or more of the Defendants that "MTI is now FusionStorm."

25

26

27

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

**WHILE STILL EMPLOYED BY MTI, FRANZ SOLICITED MTI'S EMPLOYEES TO**

**JOIN FUSIONSTORM**

49.     MTI hired defendant Franz on or about August, 2003. From his date of hire to his resignation in May, 2007, Defendant Franz worked for MTI as an Account Executive, specializing in selling EMC data storage solutions to a number of MTI customers.

50.     Franz's employment with MTI was subject to a Confidentiality and Nondisclosure Agreement (the "Franz Non-Solicitation Agreement") (Exhibit "D"), which Franz signed on or about August 18, 2003, restricting him from soliciting MTI employees on behalf of other employers during and after his employment with MTI.

51.     Franz gave notice of his intention to terminate his employment with MTI on May 14, 2007; his official last day of employment was May 28, 2007, but he agreed to continue servicing his MTI accounts until the end of the fiscal quarter, on June 30, 2007.

52.     Franz breached the terms of the Franz Non-Solicitation Agreement and his duties of loyalty to MTI by soliciting MTI's employees to terminate their employment with MTI and to thereafter become employed by FusionStorm while he was still employed by MTI. Franz continued to breach the Franz Non-Solicitation Agreement with these same activities after his employment ended on May 14, 2007 and even after he stopped servicing his MTI accounts on June 30, 2007. Indeed, MTI is informed and believes that Franz, alone and with Bocchinfuso, continued to be one of FusionStorm's main recruiters of MTI's employees throughout July, 2007. Further, these actions were not only to recruit each individual employee, but these actions were taken in order to destroy, or greatly hobble, MTI's business.

53.     MTI is informed and believes that Franz solicited and attempted to solicit, alone, and with Bocchinfuso and others, at least 14 key, highly skilled MTI employees to join FusionStorm by (among other things) making false, misleading, and disparaging statements about MTI. Among other things, Franz told MTI employees that other key employees would be quitting in the near future and joining him at FusionStorm and that FusionStorm would provide better pay and would reward employees for business they moved from MTI to FusionStorm.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

54.    Franz also disparaged MTI's operations, telling one targeted employee, for example, that because of the impending "mass defection" of employees, MTI would be forced to shut down certain operations.

55.    Moreover, Franz made false statements to targeted MTI employees that FusionStorm was in the process of acquiring MTI and that MTI had entered into a contract with FusionStorm pursuant to which MTI waived its right to keep FusionStorm from unlawfully soliciting MTI's employees.

56.    Franz did not limit his solicitation of MTI employees to the west coast, out of which he worked. MTI is informed and believes that Franz further breached the terms of the Franz Non-Solicitation Agreement as well as his duties to MTI by providing to defendant Varel and other FusionStorm executives the necessary introductions to MTI's most valuable east-coast employees, thereby providing FusionStorm with the opportunity to "cherry pick" MTI's East Coast operations and to solicit MTI's strongest and most productive employees to leave MTI and join FusionStorm.

57.    In order to attempt to circumvent the MTI employees' Employment Agreements, and to create the façade that the MTI employees had not been solicited by FusionStorm or Franz, the MTI employees were instructed, by Franz and other Defendants, including FusionStorm, and other FusionStorm employees, to send their resumes to FusionStorm through FusionStorm's online website for potential employees to submit applications to FusionStorm.  This was intended by the Defendants to create the appearance that these MTI employees sought employment with FusionStorm upon their own initiative and not in response to improper solicitations by the Defendants that violated their agreements with MTI.   MTI is further informed and believes that, as a direct result of the breach of the Franz Non-Solicitation Agreement and of Franz's duties to MTI, FusionStorm extended written employment offers to MTI's key East Coast employees, with the purpose and effect of closing down MTI's east coast operations.

58.    On information and belief, at all material times alleged herein, Varel and Serpico were the agents of FusionStorm and/or employed by FusionStorm, and in doing the acts alleged herein, they were acting within the scope of such agency and/or employment relationship, and

1    each is responsible for the wrongful acts alleged herein, and the damages suffered by Plaintiff are

2    a direct and proximate result thereof.

3         59.    On information and belief, from on or about May 28, 2007 through and including

4    the present, Franz was and is the agent and/or employed by FusionStorm, and in doing the acts

5    alleged herein was and is acting within the scope of such agency and/ or employment relationship.

6    MTI is informed and believes that FusionStorm, Varel and Serpico recruited Franz to take the

7    actions alleged herein on behalf of FusionStorm; they knew that Franz's actions violated his duty

8    of loyalty to MTI, the Franz Non-Solicitation Agreement and applicable law; and they aided and

9    abetted his actions.

10   **WHILE EMPLOYED BY MTI, LINSKY AND PRESTININZI PLAY KEY ROLES IN**

11   **ORCHESTRATING THE MASS DEFECTION OF THE MTI EAST COAST DIVISION**

12   **ALONG WITH MTI'S CUSTOMERS TO FUSIONSTORM**

13        60.    On information and belief, defendants Linsky and Prestininzi, along with Franz and

14   Bocchinfuso, were key players in the raiding of MTI East Coast Division by FusionStorm. On

15   information and belief, Linsky and Prestininzi were solicited by FusionStorm, along with

16   defendant Bocchinfuso, as alleged below, to acquire all, or substantially all of the East Coast

17   Division for FusionStorm, and for their efforts each would be paid by FusionStorm a six-figure

18   bonus.

19        61.    While still employed by MTI, Linsky and Prestininzi, with Bocchinfuso and

20   FusionStorm, planned and carried out the solicitation of MTI employees described herein and the

21   mass defection of the East Coast Division, and along with it, the solicitation and transfer of MTI

22   customers, to FusionStorm.

23        62.    During this period, Linsky, Prestininzi, and Bocchinfuso all told MTI CEO Thomas

24   Raimondi that they were not considering leaving MTI to work for competitor FusionStorm.

25   Instead, they reassured him that they would stay at MTI as long as MTI "sweetened" their

26   compensation packages. During this time frame, Bocchinfuso, an officer of MTI that participated

27   in management and exercised discretionary authority (as discussed in detail below), was included

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1   in highly confidential strategic meetings regarding the future of MTI.  He participated in those

2   meetings, in which he learned of MTI's financial situation.

3       63.    Linsky, Prestininzi and Bocchinfuso had non-solicitation obligations in their

4   Employment Agreements, Bocchinfuso also had fiduciary duties to MTI, and all of them had

5   duties of loyalty to MTI, and these obligations and duties prohibited them from soliciting fellow

6   employees on behalf of a competitor during and after their employment with MTI, prohibited them

7   from soliciting MTI's customers, and prohibited them from trying to interfere with business

8   opportunities of MTI and to destroy MTI's business.  Linsky, Prestininzi and Bocchinfuso had

9   access to MTI's confidential and proprietary information and trade secrets, including customer

10  price quotes for pending orders, knowledge of customers' needs, maintenance contracts,

11  customers' systems, and other valuable information about MTI's customers that they learned as a

12  result of their employment at MTI.  However, they were only authorized to use these materials on

13  behalf of MTI.  Using this information and trade secrets of MTI without authorization by MTI,

14  they  solicited MTI's employees and customers on FusionStorm's behalf, setting about to

15  convince the entire east coast team, along with MTI's customers, to leave MTI for FusionStorm.

16  FusionStorm, Varel, Serpico, Linsky, Prestininzi and Bocchinfuso knew that MTI's customers

17  would want to keep working with the same east coast team because of their EMC training and

18  experience, their familiarity of customers with the team members, and their course of dealings

19  with customers. Therefore, the easiest way to ensure the customers would follow with the team

20  was to bring the entire team over to FusionStorm, and MTI's customers were told that the

21  customers would never know the difference if they went to FusionStorm, since they (the

22  customers) would be serviced with their EMC products from "head to toe" as they had been while

23  the team was employed at MTI.  Thus, these Defendants tried to and did interfere with MTI's

24  business opportunities from its East Coast Division and tried to and did destroy MTI's business.

25  MTI is informed and believes that FusionStorm, Varel and Serpico recruited these Defendants to

26  take the actions alleged herein on behalf of FusionStorm; they knew that the MTI employee

27  Defendants' actions violated their obligations and duties of loyalty to MTI, and their employment

28  agreements and applicable law; and FusionStorm, Varel and Serpico aided and abetted his actions.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

-18-

**FUSIONSTORM CONSPIRES WITH MTI VICE PRESIDENT RICHARD**

**BOCCHINFUSO TO SOLICIT MTI'S EAST COAST DIVISION**

64.    Bocchinfuso was an officer of MTI with fiduciary duties to MTI.  His titles were Chief Technical Officer and Vice President Business Development.  Bocchinfuso participated in management of the corporation, and he exercised discretionary authority in carrying out his duties. In particular, Bocchinfuso directly or indirectly managed all of MTI's "sales engineers," who provided technical support to MTI's salespersons.  The sales engineers were heavily involved in and helped generate most of the orders received by MTI for product sales, and they reported to regional managers, who in turn reported to Bocchinfuso.  Bocchinfuso was also responsible for determining MTI's technical direction, meaning that he determined what markets MTI would pursue and what skill sets to develop for MTI to sell products and services to its customers.  Thus, Bocchinfuso established the overall objectives and initiatives of the company's technical expertise, which created most if not all of its revenue.  In particular, he was able to designate the number and type of technical employees to hire as long as his plans met MTI's budget constraints.  He had authority to fire employees that reported to him while working within the constraints of MTI's human resource requirements.  Therefore, in addition to his duty of loyalty as an employee, Bocchinfuso also owed MTI fiduciary duties, including without limitation the duty to refrain from activities or conduct that would compete with or otherwise harm MTI's business.

65.    Bocchinfuso signed the Confidentiality Agreement (Exhibit "A"). Paragraph 7.1 of that agreement states: "I agree that, during my consulting relationship with the Company, I will not engage in any business activity that is or may be competitive with, or that would otherwise conflict with, my consulting relationship with the Company."   Paragraph 7.2: of that agreement states "…I agree that I will not during or after my consulting relationship with the Company for myself or for any third party, directly or indirectly: (ii) employ, solicit for employment, or recommend for employment any person employed by the Company…."

66.    Commencing in or about approximately June, 2007, Bocchinfuso breached his Confidentiality Agreement with MTI as well as his fiduciary duties and his duties of loyalty to MTI, by among other things: (i) utilizing MTI's confidential and proprietary information and trade

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

secrets related to MTI's employees (without authorization by MTI) to assist FusionStorm to entice

away no less than ten (10) carefully selected employees of MTI's East Coast Division;(ii)

personally soliciting MTI employees to quit their positions with MTI, without notice, and become

employed by FusionStorm with the intent of unlawfully using MTI's trade secrets and other

confidential and proprietary information to benefit FusionStorm; (iii) unlawfully using MTI's

trade secrets and other confidential and proprietary information and revealing such information to

FusionStorm so FusionStorm could make enticing employment offers to the East Coast Division,

including above normal signing bonus offers (from $35,000 - $250,000), to MTI employees that

would be difficult to resist; (iv) unlawfully utilizing his knowledge and confidential information

and trade secrets about MTI's customers to solicit them and to win their business for FusionStorm;

(vi) unlawfully providing a list of MTI's customers to FusionStorm to assist soliciting and selling

to MTI's customers prior to the conclusion of his employment with MTI; and (vii) assuring MTI's

management and fellow officers that he was "not leaving the company for FusionStorm," and was

"trying to avert employees from leaving MTI," when in fact, he was conspiring with competitor

FusionStorm to assist this mass exodus of MTI employees and diversion of MTI's customers and

business opportunities to FusionStorm.

67.     Bocchinfuso carefully identified and solicited no fewer than 12 key MTI employees

to leave MTI and become employed by FusionStorm. Bocchinfuso made false representations to

MTI's employees that FusionStorm was acquiring MTI, that MTI soon would be incapable of

paying its employees, and that MTI had waived its right to keep FusionStorm from unlawfully

recruiting and soliciting MTI employees. Bocchinfuso also allegedly made statements to MTI's

employees that MTI was insolvent. To the extent MTI was not insolvent at the time of those

statements, those statements were false representations; to the extent that MTI was insolvent,

Bocchinfuso breached his obligations and fiduciary duties to MTI to keep such information

confidential.

68.     Bocchinfuso, Franz, Linsky, and/or Prestininzi also provided to FusionStorm

contact information for MTI employees, and this information constituted confidential or

proprietary information or trade secrets of MTI. Some of those MTI employees were then directly

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  contacted by FusionStorm and told by or on behalf of FusionStorm to submit their resumes to

2  FusionStorm's online employment website in order to avoid the appearance of improper

3  solicitation of MTI's employees by FusionStorm.

4        69.    Bocchinfuso was successful in these efforts.  He convinced Butts, Dwyer, Griffin,

5  Krekoukias, Linsky, Owen, Park, Prestininzi, and Tar to leave MTI simultaneously and without

6  advance notice.  In fact, MTI believes that the solicitations and mass defection of the MTI

7  employees were coordinated so that all of the employees would provide notice of their

8  resignations on the very same day and at the same time so that MTI would have as much difficulty

9  as possible in reviving the East Coast Division after their departure.

10        70.    The Defendants' planning and execution of their synchronized resignation was

11  well-organized and coordinated to inflict as much damage as possible on MTI. Communication

12  occurred via the defendants' blackberry devices and home email accounts because both were

13  untraceable by MTI, a fact well known to these Defendants, who had significant experience in the

14  IT industry.  The Defendants met and discussed the exact method by which they would resign.

15  Furthermore, while still employed by MTI, these employees discussed with FusionStorm's legal

16  counsel the issue of whether the contemplated actions constituted breaches of their MTI

17  employment contracts and how to minimize the appearance of wrongdoing.

18        71.    In addition, the MTI employee defendants conspired to solicit and solicited existing

19  MTI customers that the defendants had supported (on behalf of MTI) and prospective MTI

20  customers to transfer their business relationships from MTI to FusionStorm.  In fact, as part of

21  their employment with FusionStorm they were to list all of "their" customers that they would be

22  bringing to FusionStorm.  In fact, all of these customers were MTI's customers and prospects, and

23  the information known to these Defendants about such customers and prospects constituted trade

24  secrets and/or confidential and proprietary information of MTI.

25        72.    Bocchinfuso and certain other MTI employee Defendants also acted unlawfully by

26  deleting MTI's information and trade secrets contained on MTI's laptop computers, which MTI

27  had provided to them to carry out their duties on behalf of MTI.  Bocchinfuso instructed the other

28  10 MTI employees that were going to FusionStorm to do the same by emailing them to "start

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

laptop cleanup proceedings." The information that was deleted constituted MTI's confidential and proprietary information and trade secrets, including, but not limited to pricing, services, equipment and systems, maintenance contracts, renewal dates, renewal pricing, and price quotes for new pending orders. Upon information and belief, the MTI employee defendants deleted from MTI's laptops pending MTI customer sales orders, which were worth several million dollars and transferred those orders to their new employer, FusionStorm, by soliciting those customers to place the same or equivalent orders with FusionStorm. Thus, the MTI employee Defendants intentionally accessed the protected computers of MTI, either without authorization or in excess of their authorization, and thereby obtained MTI's confidential or proprietary information and trade secrets from those computers. They took these actions in furtherance of FusionStorm's scheme to unlawfully unfairly obtain the East Coast Division; they obtained valuable proprietary trade secrets and confidential information, which have a value exceeding five thousand dollars; and they caused damage and loss in excess of $ 5,000 on information and belief. As a result of Defendants' unauthorized access of MTI's protected computers and unauthorized removal, possession, and deletion of MTI's electronic files and documents, MTI incurred substantial damages and losses, including without limitation the costs of investigating Defendants' actions, determining how and whether to assess the damage they caused, and using other resources to attempt to mitigate the damage caused by the Defendants. The Defendants' misuse and misappropriation of MTI's proprietary and confidential information and trade secrets was done in a manner that was inconsistent with MTI's interests, was in violation of contractual obligations with MTI, and/or was in violation of fiduciary duties and duties of loyalty of the Defendants.

73.    Bocchinfuso's breach of his fiduciary duties has caused significant harm to MTI. Such harm includes the simultaneous loss of no less than ten (10) employees, without prior notice, which constituted substantially all of the East Coast Division, interference with MTI's business, loss of MTI's East Coast customers and their sales, and damage to its reputation in the east coast market. Further, MTI believes that these actions ultimately led or greatly contributed to MTI's financial distress and need to file for bankruptcy.

74.    The foregoing acts were willful and malicious and were performed with the intent to damage MTI's business.  Plaintiff is therefore entitled to an award of exemplary damages and reasonable attorneys' fees according to proof at trial.  Further, by creating and enlisting the MTI employee Defendants in FusionStorm's scheme, FusionStorm, Varel and Serpico aided and abetted Bocchinfuso and the other MTI employee Defendants in breaching their duties to MTI and in taking the other unfair and unlawful actions alleged herein.  Also, by taking the actions alleged herein to participate in this scheme, the MTI employee Defendants aided and abetted Bocchinfuso in breaching his fiduciary duties, duties of loyalty, and obligations to MTI and in taking the unfair and unlawful actions alleged herein.  Thus, the Defendants tried to and did interfere with MTI's business opportunities and tried to and did destroy MTI's business.

**FUSIONSTORM FEIGNS INTEREST IN MERGING/PURCHASING MTI, SIGNS A CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT WITH MTI, AND IMMEDIATELY THEREAFTER BREACHED THIS AGREEMENT BY RAIDING MTI'S OPERATIONS**

75.    On or about June 19, 2007, defendant Varel, in his capacity as Chief Executive Officer and Chairman of the Board of FusionStorm, on behalf of FusionStorm entered into a written "Mutual Confidentiality Agreement" with MTI (the "FusionStorm Agreement" or "Mutual Confidentiality Agreement," a true and correct copy of which is attached hereto as **Exhibit "R"**), for the purpose of obtaining confidential and proprietary information and trade secrets from MTI with the feigned intent of merging/purchasing MTI.  The FusionStorm Agreement has not expired and has not been terminated and that contract forms part of the basis of this action.

76.    The purpose of the Confidentiality Agreement was to protect and preserve the confidential and /or propriety information and materials and trade secrets that were disclosed or made available by each party to the other in connection with the parties' discussions, negotiations, and/or dealings related to a potential strategic transaction.  Under the Mutual Confidentiality Agreement, the term "Proprietary Information" included (among other things) proprietary and confidential information and trade secrets of MTI, and the party that received Proprietary Information from the other agreed only to use that Proprietary Information for the purpose of

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

considering a "strategic transaction" between MTI and FusionStorm, and not for any other

purpose. Because of FusionStorm's statements, which were made prior to execution and during

performance of the Mutual Confidentiality Agreement, MTI believed that FusionStorm was

seriously considering acquiring or merging with MTI and that FusionStorm intended solely to use

MTI's Proprietary Information for that purpose. On information and belief, however,

FusionStorm only initiated communications with MTI in connection with this potential transaction

for the purposes of obtaining MTI's confidential and proprietary information and trade secrets and

facilitating its intended raid on MTI's operations, employees, and customers, and not for

considering a strategic transaction with MTI. Specifically, FusionStorm used the confidential and

proprietary information and trade secrets disclosed by MTI to FusionStorm for a purpose that

violated the Mutual Confidentiality Agreement: to confirm the revenue and profit that the East

Coast Division had generated to determine if FusionStorm wanted to hire MTI's employees.

Thus, FusionStorm's stated reason of conducting due diligence of MTI's financial records for

considering an acquisition or merger with MTI was merely a pretense.

77.    Pursuant to paragraph 10 of the FusionStorm Agreement, MTI and FusionStorm

each agreed *inter alia*, that "during the period until the Purpose [of the contract] is completed and

for one (1) year thereafter, it [would] not (for itself or any third party) divert or attempt to divert

from the other party any  employee or contractor, through solicitation or otherwise; provided, that

the foregoing shall not prevent the hiring of an employee through the engagement of a recruiting

firm or a public general advertisement, to the extent that such efforts are not specifically directed

at employees of the other party."

78.    In breach of that contract, and on behalf of FusionStorm, Varel, Serpico and other

FusionStorm employees and/or agents, actively solicited, recruited, extended offers to and hired

numerous key MTI employees, and they began doing so simultaneously with or shortly after

entering into the FusionStorm Agreement. While they were still employees of MTI, the former

MTI employee Defendants improperly used MTI's confidential and/or proprietary information --

to which they were only granted access to further MTI's interests pursuant to their Confidentiality

Agreements on behalf of MTI -- to recruit and solicit MTI's employees on behalf of FusionStorm.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  FusionStorm contacted the MTI employees through emails, telephone, blackberry, and/or through

2  fellow MTI co-workers.  FusionStorm even went so far as to advise the solicited MTI employees

3  to submit their resumes on-line to FusionStorm's employment web-site, in order to avoid the

4  appearance of FusionStorm having breached its agreement with MTI.  Eleven of these employees

5  working in MTI's east coast division accepted Varel's offers on behalf of FusionStorm and

6  defected to FusionStorm.  On information and belief, all or some of the MTI employee Defendants

7  submitted their resumes online to FusionStorm after having been solicited by FusionStorm

8  knowingly and willfully to avoid the appearance of breaches of the Defendants' agreements with

9  MTI.

10      79.    Also in breach of the FusionStorm Agreement and/or the implied covenant of good

11  faith and fair dealing implied therein, and in violation of applicable law, on information and belief,

12  FusionStorm, Varel and Serpico on induced, ratified, and approved the solicitations of MTI

13  employees by Franz,  Linsky, Bocchinfuso and Prestininzi and the other actions of the MTI

14  employee Defendants described herein.

15  **AFTER RECEIVING MTI'S JULY 13, 2007 DEMAND LETTER, FUSIONSTORM**

16  **CONTINUED TO SOLICIT MTI'S EMPLOYEES AND MISREPRESENTED IN OFFER**

17  **LETTERS TO THOSE EMPLOYEES THAT AN OFFICER OF MTI HAD JOINED**

18  **FUSIONSTORM**

19      80.    MTI learned that FusionStorm was illegally soliciting its employees, and on July

20  13, 2007, MTI demanded in a letter to FusionStorm that defendants refrain from soliciting MTI

21  employees in violation of their contractual and legal obligations to MTI. MTI is informed and

22  believes that the Defendants refused, and continued to refuse, to comply with their contractual and

23  legal obligations and that the Defendants persisted in their scheme to raid MTI's employees and to

24  decimate MTI's business operations.

25      81.    In particular, MTI learned that FusionStorm gave Tom Tar, an MTI employee, an

26  offer letter of employment dated July 18, 2007, which stated that Tar's supervisor at FusionStorm

27  would be "Richard Bocchinfuso, Vice President of Technology, EMC Solutions."  However, as of

28  July 18, 2007, <u>Bocchinfuso was still *MTI's* Chief Technology Officer</u>, and on that date

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1   Bocchinfuso attended MTI's highly confidential strategy update meeting in Boston with MTI's

2   Thomas P. Raimondi, CEO, and Keith Clark, EVP Europe and World Wide Field Operations.

3   Bocchinfuso had not even notified MTI of his intention to resign on or before the date of Tar's

4   FusionStorm offer letter.

5           82.     Further, the fact that FusionStorm intended to give Bocchinfuso the title "Vice

6   President of Technology, *EMC Solutions*" supports MTI's informed understanding that, by

7   FusionStorm's raid of MTI, FusionStorm intended to expand its EMC-solution offerings by taking

8   MTI's business opportunities embodied in its East Coast Division. MTI sold and serviced EMC

9   solutions almost exclusively and was 4 years into a 6-year "EMC exclusive" contract.  This EMC

10  contract allowed MTI to have phenomenal sales to its accounts and rapid revenue growth and

11  infiltration in the marketplace.  Bocchinfuso's intended title at FusionStorm shows that

12  FusionStorm intended to obtain MTI's well-established EMC practice unlawfully and unfairly by

13  raiding MTI instead of obtaining such a practice by lawful means.

14                          **FIRST CLAIM FOR RELIEF**

15                  **(Breach of Contract - Against Defendant FusionStorm)**

16          83.     MTI realleges and incorporates by reference as though fully set forth herein each

17  and every allegation of paragraphs 1 through 82 above.

18          84.     On or about June 19, 2007, MTI and FusionStorm entered into the Mutual

19  Confidentiality Agreement, a copy of which is attached hereto as **Exhibit "R."**

20          85.     Defendant Varel signed that contract on FusionStorm's behalf.

21          86.     MTI has fully performed all obligations pursuant to that contract except those

22  obligations MTI was prevented or excused from performing.

23          87.     FusionStorm breached that contract by various acts commencing on or about June

24  19, 2007, which include the following:

25                  a.      Intentionally targeting for recruitment and soliciting and hiring MTI's

26  employees; and

27                  b.      Using MTI's confidential and/or proprietary information and trade secrets

28  obtained from MTI under the terms and conditions of the Mutual Confidentiality Agreement to

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1    recruit, solicit and hire MTI's employees, to solicit MTI's customers, and to carry out

2    FusionStorm's scheme to damage MTI's business, rather than for the only allowed purpose of

3    considering a strategic transaction with MTI.

4          88.     As a direct and proximate result of FusionStorm's breaches of the Mutual

5    Confidentiality Agreement, MTI has been damaged in an amount to be proven at trial, but not less

6    than $1 million.

7                        **SECOND CLAIM FOR RELIEF**

8       **(Breach of Contract - Against Defendants Bocchinfuso, Butts, Dwyer, Griffin,**

9          **Krekoukias, Franz, Linsky, Owen, Park, Prestininzi, and Tar)**

10        89.     MTI realleges and incorporates by reference as though fully set forth herein each

11    and every allegation of paragraphs 1 through 88, above.

12        90.     MTI, and each of the defendants Bocchinfuso, Butts, Dwyer, Franz, Griffin,

13    Krekoukias, Linsky, Owen, Park, Prestininzi, and Tar, entered into written Confidentiality and

14    Nondisclosure Agreements, Use and Compliance Agreements and other agreements with MTI, as

15    fully set forth above.

16        91.     MTI has fully performed all obligations pursuant to those agreements except those

17    obligations MTI was prevented or excused from performing.

18        92.     As stated above, each of the defendants breached their respective agreements with

19    MTI by various acts, including but not limited to, soliciting MTI employees and customers on

20    behalf of FusionStorm, copying and deleting from their laptops and other devices MTI's

21    proprietary and confidential information and trade secrets, and improperly retaining, disclosing

22    and using such information and trade secrets of MTI, commencing on an exact date unknown to

23    MTI, but at least since May, 2007.

24        93.     As a direct and proximate result of each defendant's breach of contract, MTI has

25    been damaged in an amount to be proven at trial but not less than $1 million.

26

27

28

**CLARKSON, GORE & MARSELLA, APLC**
Attorneys At Law
Torrance, California